### JOHN F. SLATTERY *vs.* NORTH END SAVINGS BANK.

Suffolk.    November 14, 1899. — March 2, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Authority of President and Treasurer of Savings Bank to make Building Loan — Action — Estoppel.*

The president and treasurer of a savings bank, in the absence of a by-law or vote of the trustees, have no authority to purchase or contract in the name of the bank for work and material to be furnished in completing buildings on land subject to a building-loan mortgage; and the bank is not estopped, in an action against it for materials furnished, to deny the debt, although the transaction took the form of a sale of the materials to the bank.

CONTRACT, upon an account annexed, for building materials. Trial in the Superior Court, before *Bell, J.*, who ruled that the plaintiff was not entitled to recover, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*R. W. Nason*, for the plaintiff.

*C. Hunneman*, for the defendant.

BARKER, J.  The verdict for the defendant was ordered upon the evidence introduced by the plaintiff.

In considering whether the order was right, all facts must be treated as proved which tend to support the action and which can be inferred fairly from the evidence. It tended to prove that the defendant had taken from one Lord a mortgage of land upon which Lord was building some dwelling-houses which, by the understanding between himself and the defendant, he was to complete, and that the defendant had made to Lord upon the mortgage of the land a loan, of which a large amount was retained by the lender, to be applied by it under the direction of Lord in paying for the work and materials which should be used in the completion of the houses. In other words, the defendant had made what is commonly termed a building loan to Lord, and so had his money in its hands upon the trust to apply it so far as might be necessary under his direction toward the completion of the houses.

The evidence would also justify a finding that the president and the treasurer of the defendant were its executive officers, clothed with authority to transact such business for it as came within the lines of its usual and ordinary business of investing its funds. Also that the goods for the price of which the plaintiff sues were sold to the defendant acting through its president and treasurer for the purpose of being used in the completion of the buildings, and were in fact so used, and that the arrangement that they should be so sold and used, and should be paid for upon the completion of the buildings, by the bank, and out of Lord's money in the bank's hands, was fairly made by and between Lord, the plaintiff, and the bank's president and treasurer, and that the prices of the goods so furnished and used in the building of the houses were fair, and that the plaintiff has not been paid. There was no evidence of the extent of the authority committed to the president and treasurer except that they were apparently in charge of the bank's business at its banking-house. No vote of the trustees nor any by-laws were in evidence, nor was it shown that the bank had used its executive officers to act for it in such matters of business as might arise in connection with building loans. All the evidence related to this single transaction.

If the circumstances which the evidence tended to prove were facts, it seems very harsh to hold that the plaintiff cannot recover of the bank. If a savings bank can make a building loan, such transactions as that between the bank, Lord, and the plaintiff in the present case are a legitimate result of the situation. By a fair arrangement, into which the usual executive officers of the bank purport to bring it, the three parties interested agree that the money of the mortgagor, intrusted to the mortgagee for the purpose of securing the completion of the building on the mortgaged land, shall be applied to that end, by way of a sale of materials to one who furnishes them to go into the building, and of an agreement, in which both mortgagor and mortgagee join, that the latter shall pay the bill out of the mortgagor's money in the mortgagee's hands. The bargain is fair to all parties, and the money to be paid for the materials is the money of the mortgagor.

But, for wise reasons, the powers which the executive officers of savings banks and like institutions have, merely by virtue

of their offices, unenlarged by by-laws or by votes of the trustees, are very strictly limited. If a savings bank should commonly make building loans, it might well be that it would put upon some member of its board of investment, rather than upon its executive officers, the duty of seeing that the money of the mortgagor retained to ensure the completion of the building should be so applied.

In the absence of any evidence of the authority of the president and treasurer other than that which may be inferred from the offices which they held, we are of opinion that the present case is governed by the decision in *Jewett* v. *West Somerville Co-operative Bank,* 173 Mass. 54, in which the authority of the treasurers of such institutions and of savings banks has been discussed recently. In that case it was held that, assuming that the bank could have bound itself by the acceptance of an order given for materials to be used in the completion of a building on which the bank had a building loan, its treasurer could not bind the bank by such an acceptance without express authority from the corporation, and that no action could be maintained against the bank upon an acceptance so given. The purchase of materials to go into the construction of the building is farther removed from banking than the acceptance of an order for the payment of money in the hands of the bank, and to be disbursed for a purpose for which the order was given and accepted. If the treasurer, by virtue of his office, could not bind the bank by the acceptance of such an order, he could not make it the purchaser of the materials by buying them in its name.

The final contention of the plaintiff is that the defendant is estopped to deny the debt. In the first place the very restricted authority of the merely executive officers of a savings bank is part of the policy of our law, which confines the business of such banks within very narrow limits. See *Bradlee* v. *Warren Five Cents Savings Bank,* 127 Mass. 107 ; *Jewett* v. *West Somerville Co-operative Bank, ubi supra.* If the materials had been purchased for the construction of a banking-house for the accommodation of the business of the bank, or for the necessary repair of a building upon land the title to which the bank had acquired in the legitimate course of its business, it might not offend public

policy to hold the bank estopped to deny that it was bound by the purchase. But to go farther would infringe the policy of our law. Again, the transaction was so far out of the ordinary business of a savings bank that the plaintiff was reasonably put upon inquiry as to the authority of the president and treasurer to make the purchase. Finally, while the transaction took the form of a sale to the bank, it was understood by all parties that the materials were to be at once made part of a building which belonged to Lord, and not to the bank; and the arrangement, while consistent with the interest of the bank, was primarily for the benefit of Lord, and not essential to the protection of the bank. It is to be assumed that if Lord could not complete the building, the mortgage was a sufficient security for the money actually advanced upon it up to the time when the arrangement was made. We are of opinion that the case does not call for the application of the doctrine of estoppel.

*Exceptions overruled.*