ADALINE J. LONERGAN *vs.* HIGHLAND TRUST COMPANY & another.

Middlesex. February 7, 1934. — September 12, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & DONAHUE, JJ.

*Contract*, What constitutes, Consideration, Performance and breach, Validity. *Bank and Banking. Trust Company. Corporation*, Officers and agents, Ultra vires. *Agency*, Scope of employment. *Equity Jurisdiction*, Specific performance, Equity regards as done that which ought to have been done.

In a suit in equity against a trust company and the commissioner of banks, there was evidence that, three days before the commissioner took possession of the trust company under G. L. (Ter. Ed.) c. 167, the plaintiff, who had given to its savings department a note secured by a mortgage and not then due, and who also then had on deposit in a checking account with the trust company more than enough money to pay the note in full, being apprehensive as to the condition of the trust company, talked on the telephone with an authorized representative of it, whom he told that he was determined either to pay the note in full out of the money on deposit or to withdraw that money; that the representative replied that if the plaintiff would send his check to the trust company, the representative would see that the note was paid; that the plaintiff said he wanted this done immediately and

offered to go to the trust company for that purpose, whereupon the representative replied that that would not be necessary and that he would take care of the matter immediately upon receiving the check; and that the plaintiff, in reliance on the representative's promise, refrained from going to the trust company to withdraw his money and on the same day drew and mailed to it his check for the amount of the note, which check reached the trust company a few hours before the commissioner took possession and at a time when it was open for business, but was not applied by the trust company to the payment of the plaintiff's note. The plaintiff sought to compel the defendants to credit him with the amount of the note and to deliver the note and mortgage to him. A decree in the plaintiff's favor was entered. On appeal by the defendants, it was *held,* that

(1) A finding was warranted that there was made between the plaintiff and the trust company a binding contract, supported by consideration as to each party, for the payment of the note by the trust company's transferring the amount thereof from the plaintiff's checking account to its savings department;

(2) A finding was warranted that the plaintiff had performed his part of the contract;

(3) In the circumstances, the court of equity should regard as done that which ought to have been done, namely, such transfer by the trust company of the amount of the note immediately upon the receipt of the plaintiff's check and while the trust company was open for business;

(4) There was nothing to prevent this in the provisions of G. L. (Ter. Ed.) c. 172, § 62;

(5) Relief by way of specific performance was proper in the circumstances;

(6) The relief sought by the plaintiff was within general equity jurisdiction;

(7) The decree was proper.

The contract between the plaintiff and the trust company above described was not contrary to law, was within the corporate powers of the trust company, and was one which a duly authorized representative thereof could make in its behalf.

The authority of an officer of a banking corporation to represent it need not be in writing nor be shown by the corporate records.

Evidence, that one, who was the largest stockholder of a trust company and chairman of its executive committee and of its investment committee, for a number of years had been, without special delegation of authority to him, the active head and managing officer of the trust company and had exercised general supervision of the conduct of its business, and that the trust company was generally known as a "one man bank," of which such person appeared to be in full and complete charge, although its by-laws vested general management of its affairs in other officers, warranted a finding that he had ostensible authority from the trust company, and was held out by it as possessing authority, to make in its behalf a contract with one who had money on deposit in a checking account, whereby, in consideration of the depositor's

refraining from withdrawing his deposit, a mortgage note given by
him to the trust company and held by its savings department was to
be paid before maturity by the trust company's transferring money
from the checking account to the savings department upon the de-
positor's check; the circumstances, that no by-law and no recorded
vote of the directors or the executive committee of the trust com-
pany authorized in advance or ratified the making of such contract,
that such officer had not previously undertaken to make precisely
that kind of contract in its behalf and that the particular offices held
by him did not by name import executive primacy on his part in the
trust company, were not of consequence.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Middlesex on June 24, 1932, described in the
opinion.

The suit was referred to a master. Material findings by
him are stated in the opinion. By order of *Field*, J., there
were entered an interlocutory decree confirming the master's
report, and a final decree in the plaintiff's favor. The de-
fendants appealed from both decrees.

*G. E. Mears*, for the defendants.

*E. O. Proctor*, for the plaintiff.

RUGG, C.J. This case comes before us on appeals from
an interlocutory decree overruling exceptions to and con-
firming a master's report and from a final decree granting
relief to the plaintiff. The facts alleged in the bill and
admitted by the answer are that the plaintiff on April 24,
1931, executed and delivered to the Highland Trust Com-
pany, hereafter called the trust company, a mortgage of
real estate in Cambridge owned by her to secure her note
for $10,000 payable on April 24, 1934, the note and mort-
gage being held by the savings department of the trust
company. The plaintiff on, and for a considerable period
before, October 10, 1931, had more than $10,000 on deposit
with the trust company in a checking account. The de-
fendant, the commissioner of banks, took possession of
the property and business of the trust company under
G. L. (Ter. Ed.) c. 167 on October 13, 1931, at twenty-three
minutes after one o'clock in the afternoon. The main
prayer of the bill is for an order to the defendants to can-
cel and deliver up to the plaintiff her mortgage and note

and to credit the plaintiff with $10,000. The relevant facts as found by the master are these: It had been the custom of the trust company to pay the interest on this note to its savings department from the checking account of the plaintiff in its commercial department. The plaintiff was apprehensive about the condition of the trust company for about a week previous to its being closed. On October 10, 1931, she called the trust company on the telephone and inquired for the treasurer but was told he was busy; she then said that she wanted to turn in her account and to pay her mortgage and desired to talk with some one in authority on that subject; she was put on the telephone of the mortgage teller; she stated to him her desire and he told her that he would let her talk with a man "who will take care of it." Then Ray R. Rideout came to the telephone. He told her that her mortgage was not due and advised her not to pay it until due. She replied that if she could not pay it, she was going to the trust company to withdraw her $10,000 and interest. He advised her not to do that. She answered that she was determined either to withdraw her money or to get a release of her mortgage. He then said that if she would send over a check he would have the loan in the savings department paid off. She said, "I want it done immediately. Shall I come over?" She was told that there was no need of her coming over, that if she would send her check he would take care of it immediately. There was further talk about details not here important. There is no essential dispute as to the fact or substance of this conversation. The plaintiff understood and believed that she was dealing with Rideout as an officer of the trust company who had authority to make the agreement to accelerate the payment of her note. In reliance upon the agreement made with him, she refrained from going immediately to the trust company and withdrawing the amount on deposit to her credit, which otherwise she would have done. She drew and mailed her check for $10,000 to the trust company on the same day.

The findings of the master touching this point are: "I

find from the language above reported, in so far as it is a question of fact, that it was the expressed intention of Rideout, acting for and in behalf of the trust company, to relinquish then and there the right of the trust company that the mortgage note should not be paid until maturity and that he promised for and in behalf of the trust company to accept in payment and discharge of said note a check for $10,000 drawn by the plaintiff on her account in the commercial department; that he intended and did then and there negotiate for and on behalf of the trust company to transfer $10,000 from the funds of the commercial department to the savings department; that the aforesaid relinquishment of rights and promises made were supported by a valid consideration on the plaintiff's part, namely her refraining from immediately going to the trust company and drawing out the full amount of her account and her sending the check." The check, with accompanying letter stating the agreement briefly, was sent by the plaintiff by mail on October 10, 1931, which was a Saturday. It was the understanding of both Rideout and the plaintiff that the check was to be sent by mail. The following Monday was a holiday. The letter was delivered to the trust company on Tuesday morning, October 13, 1931. There had been a run on the trust company the previous week which had decreased but which commenced again on that morning. The atmosphere in the bank was tense. There was no evidence that the letter of the plaintiff was given attention and her check was not applied by the trust company to the payment of the plaintiff's note and mortgage. After the commissioner of banks took possession, on the afternoon of that day, he and his liquidating agent refused to make such application. The check has been returned to the plaintiff.

The finding of the master based on the conversation over the telephone between the plaintiff and Rideout that there was a binding contract between the plaintiff and the trust company (so far as Rideout had authority to bind the latter) was warranted by the evidence. The plaintiff had on deposit with the trust company a sum in excess of

$10,000. She had a right to withdraw it on demand. The trust company was open and doing business in due course at the time. The plaintiff could readily and quickly have presented herself at its counter and required payment. She was determined to do this if her note could not be paid out of her deposit. The withdrawal of such a sum at that time well might have been a gain to her and an embarrassment to the trust company. She was willing to forego that advantage to herself provided she could be assured of the application of that deposit to the payment of her unmatured note and the discharge of the mortgage by which it was secured. The trust company wanted to be relieved of the obligation to pay out at once $10,000 in cash and to be assured that that sum would remain with it. The bargain was struck between the parties. It was upon a sufficient consideration as to each party. The promise by the trust company was to accept the check of the plaintiff drawn on itself to its own order. The inference of an agreement of the tenor stated by the master was amply warranted by the subsidiary facts found and by the conversation reported.

The natural import of the words used by the plaintiff and by Rideout in the light of the facts known to both justified the finding that the check was to be sent by mail directed to the trust company and was to be posted on the day of the conversation. To hold that it was to be sent to the trust company instantly in person or by messenger would be too narrow a construction. It reached its destination several hours before the trust company was closed. It was a check drawn against funds in the trust company itself and payable to its order so that no question of collection is involved. It did not require presentment, demand or acceptance. The case at bar is distinguishable from cases like *Keystone Grape Co.* v. *Hustis*, 232 Mass. 162. The finding was warranted that the plaintiff performed her part of the contract according to its terms. The check was received by the trust company while it was open and early in the day on the afternoon of which the commissioner of banks took possession of its business and property.

The remaining question for decision is whether the find-

ing was warranted to the effect that Rideout had authority to bind the trust company by the contract made by him in its behalf with the plaintiff. Facts pertinent to this question are these: In October, 1931, there were a president, a treasurer and two assistant treasurers of the trust company. Rideout had been chairman of its executive committee and of its investment committee since November, 1923. He was its largest stockholder. All important matters at the trust company were referred to him. If they required immediate decision, he would pass upon them at once and the executive committee or the investment committee would later approve his action. In respect to large loans he would tell the borrowers what the trust company would do and the matter would then be taken up with the executive committee or the investment committee. He was the active head and managing officer of the trust company and exercised general supervision of the conduct of its business. The actual work of drawing mortgages or discharges of mortgages was done by his subordinates after Rideout had made his decisions and given directions. The trust company was generally known as a "one man bank" and Rideout appeared to be in full and complete charge. He received a substantial salary and had been voted an additional amount to defray the expenses of a recent trip to Europe. The by-laws of the trust company vested general management of its affairs in the board of directors, and provided for a president to have general direction and supervision of its business, and for the executive committee with advisory and supervisory powers as to investments of the trust company and an investment committee with respect to performance of statutory duties in the savings department. The treasurer was clothed with authority as to the discharge of mortgages in addition to other powers. The plaintiff had no knowledge of any of the by-laws. No by-law and no recorded vote of the directors or executive committee authorized in advance or ratified the agreement by Rideout in behalf of the trust company with the plaintiff.

The contract here in suit as made by Rideout was strictly

within the scope of the corporate powers of the trust company. It was not contrary to any law. It related to the payment of a note of the plaintiff held by the trust company and to the application of a deposit in it of funds by the plaintiff. Both these were matters within the ordinary functions of the trust company. Some officer or agent of the trust company had power or could be authorized to make the contract. It is in this connection that the course of conduct of Rideout covering a number of years is significant. He habitually exercised very large powers without special delegation of authority. He could not have exerted the wide powers over the affairs of the trust company disclosed by the record without the express or implied authority of its responsible officers. The prolonged performance of these extensive duties and functions constituted a holding him out by the trust company as possessed of such authority. His ostensible powers in these circumstances were his real powers. *Six Little Tailors, Inc.* v. *Old South Trust Co.* 260 Mass. 41, 44. *Wasserman* v. *Cosmopolitan Trust Co.* 252 Mass. 253, 256. *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 594. The fact that it does not appear that he had ever undertaken to make the precise kind of a contract made with the plaintiff is not significant because that contract falls within the general class of acts done by him over a period of years. The circumstance that the particular offices held by Rideout did not by name import executive primacy in the trust company is not of consequence. He was chairman of two important committees of genuine power. He was himself the largest stockholder and had heavy financial interest. Apparently he was at the place of business of the trust company a large part of the time. The inquiry is, what were his real or ostensible powers. A banking corporation in the absence of special provision to the contrary may be represented by any officer possessing the requisite authorization. That authority need not be in writing nor be shown by the records. As was said respecting an officer of a bank in *Martin* v. *Webb*, 110 U. S. 7, 14, 15, "His authority may be by parol and collected from circumstances. It may be inferred from the general

manner in which, for a period sufficiently long to establish a settled course of business, he has been allowed, without interference, to conduct the affairs of the bank. It may be implied from the conduct or acquiescence of the corporation, as represented by the board of directors. When, during a series of years or in numerous business transactions, he has been permitted, without objection and in his official capacity, to pursue a particular course of conduct, it may be presumed, as between the bank and those who in good faith deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations. Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. . . ." Banks as well as other corporations "are liable for the acts of their servants while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances." *Merchants' Bank* v. *State Bank,* 10 Wall. 604, 645. In *Citizens' Trust Co.* v. *Croll,* 289 Fed. Rep. 421, 423, occurs this language: "Authority to act for the bank may be by express grant, or by way of implication from a course of conduct covering a considerable period, acquiesced in by the officials of the bank." *Wing* v. *Commercial & Savings Bank,* 103 Mich. 565. *Pattison* v. *Syracuse National Bank,* 80 N. Y. 82. See *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176, 179.

It follows that there was no error in the finding that Rideout was authorized to make in behalf of the trust company the contract with the plaintiff.

There are numerous decisions of this court illustrating the principle that the authority of officers or agents of banks is not in general to be extended by implication. *Bradlee* v. *Warren Five Cents Savings Bank,* 127 Mass. 107. *Jewett* v. *West Somerville Co-operative Bank,* 173 Mass 54.

*Slattery* v. *North End Savings Bank*, 175 Mass. 380. *Newburyport Institution for Savings* v. *Brookline*, 220 Mass. 300. The principle thus illustrated is not relaxed by anything here decided. It is inapplicable to the case at bar because of the nature of the facts set forth in this record.

Specific performance is not a matter of absolute right but rests in sound judicial discretion. The facts here disclosed are such as to render appropriate the granting of relief by specific performance. Except for the contract, the plaintiff would have gone to the trust company on October 10, 1931, and withdrawn her deposit. She did not do that because the contract was made and she relied upon its terms to protect her rights. She performed her part of the contract. She can get no other relief since the trust company is now insolvent. *Goodhue* v. *State Street Trust Co.* 267 Mass. 28, 43. *Bancroft Trust Co.* v. *Canane*, 271 Mass. 191, 200. The relief sought is within the general equity jurisdiction of the court. *McArthur* v. *Hood Rubber Co.* 221 Mass. 372. The transaction should be treated as concluded when the check of the plaintiff was received by the trust company. In order to do justice equity regards that as done which ought to have been done. *Pilok* v. *Bednarski*, 230 Mass. 56, 58. If that had been done which ought to have been done in the case at bar the trust company upon receipt of the plaintiff's check, while open for business, would have transferred $10,000 from its commercial department to its savings department in payment of the plaintiff's indebtedness. There was nothing to prevent this in the provisions of G. L. (Ter. Ed.) c. 172, § 62, as to the security of savings deposits and investments. The case at bar is distinguishable from *Tremont Trust Co.* v. *Baker*, 243 Mass. 530, where the agreement in issue was directly contrary to the terms of the statute. See *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114. No conduct of the plaintiff bars her from relief as in cases like *Harris Realty Co.* v. *Epstein*, 266 Mass. 366, 369, 370. On the contrary if relief is denied she will suffer from confidence placed upon the conduct of the trust company.

All the arguments put forward in behalf of the defendants have been considered, but they need not be discussed at further length.

                    *Interlocutory and final decrees affirmed.*