FEDERAL NATIONAL BANK OF BOSTON *vs.* JOSEPH F. O'CONNELL.

Suffolk.    November 10, 1939. — April 2, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Agency,* Scope of authority. *Trust Company,* Officers and agents. *Practice, Civil,* Exceptions: what questions open. *Payment    Bills and Notes,* Payment. *Contract,* Novation.

An exception to a general finding by a judge in an action at law does not bring to this court the question of law, whether such finding was permissible upon subsidiary findings set forth by him in a statement of findings, where it does not appear from the record that such general finding was a conclusion from those subsidiary findings only and that it did not rest in part upon other findings upon all the evidence.

A finding that one, who was a director, vice-president, and treasurer of a Massachusetts trust company, clerk of its board of directors and secretary of its executive committee, had ostensible authority to accept, in payment of an overdue collateral security note, the note of a third person secured by the same collateral, was warranted by evidence that the maker of the overdue note was told by the president and by the chairman of the board of directors of the trust company that the board had authorized that officer to effect the transaction and that afterwards it was affirmed by the president.

CONTRACT.    Writ in the Superior Court dated May 27, 1925.

At the second trial, the action was heard by *Donnelly,* J.

*J. C. Coughlin,* for the plaintiff.

*F. P. Garland,* (*L. O'Connell* with him,) for the defendant.

DOLAN, J.    This is an action of contract to recover the balance alleged to be due, together with interest, on a demand note given by the defendant to the plaintiff's predecessor, the Metropolitan Trust Company.    The defendant's answer contains a general denial and allegations of payment and satisfaction.    The case was first tried before a judge of the Superior Court sitting without a jury.    He found for the defendant.    The plaintiff's exceptions taken at that trial were sustained by this court in *Pearson* v. *O'Connell,* 291 Mass. 527.    After this decision one Deitrick

succeeded Pearson as receiver of the plaintiff. Deitrick was permitted to appear and prosecute the action and a new trial was had before a judge sitting without a jury. He found for the defendant. The case now comes before us on the plaintiff's exceptions.

At the second trial the defendant admitted that he gave the note in suit, dated June 1, 1921, to the Metropolitan Trust Company, which thereafter transferred all its assets, including the note, to the Federal National Bank of Boston. The amount due according to the terms of the note at the time of the second trial was agreed to be $9,883.89. There were pledged as collateral security for the payment of the note five shares of the common stock and twenty-five shares of the preferred stock of the Industrial Finance Company, together with four bonds of the Virginia Food Products Company, of the face value of $1,000 each.

Other evidence tended to show the following facts: The note in question was given by the defendant on or about June 1, 1921, to the Metropolitan Trust Company, hereinafter referred to as the trust company, in place of two former notes of the defendant held by the trust company. Shortly thereafter one Stickney, who was a director, vice-president and treasurer of the trust company, demanded payment of the note. The "defendant told Stickney he did not have the money to pay the note and if called upon to pay it he would have to sell at public auction the Industrial Finance stock pledged against the note which 'you sold to me here in this bank.'" Stickney then told the defendant that he hoped he would not do that because, as the defendant knew, "many of the officers of the . . . [trust company] were stockholders of Industrial Finance; the . . . [trust company] had loaned the Industrial Finance Co. large sums of money, and the . . . [trust company] had also loaned other large sums of money to the Asbestos Corporation of Vermont which had been financed by the Industrial Finance Co; that if the stock were put on the market it would badly affect the . . . [trust company] and 'it would be very embarrassing to us' . . . .'" Stickney then suggested that the defendant wait a few days and said that he (Stickney)

"would think the matter over and talk with the directors of the bank and see what could be done."

A few days later Stickney sent for the defendant and told him that "he had the thing fixed up; that he had talked with the directors, had sent for [one] Cashman, and had agreed with Mr. Cashman to take Cashman's note for the amount of the defendant's note with the same collateral against it." Stickney said that he had taken the matter up with Cashman, that it was agreeable to Cashman and to the officers of the trust company, and that the acceptance by the latter of Cashman's note would pay the defendant's note. While Stickney was engaged in this conversation with the defendant, one Wood, the president of the trust company, and one Bartlett, the chairman of its board of directors, came out of the directors' room. Wood asked the defendant if Stickney had told him "all that had taken place that morning in the board of directors about defendant's note, how they had given Stickney authority to fix it up with H. Cashman & Co. Defendant stated that he had, and Mr. Wood added 'Well, Mr. Bartlett and I want to thank you for getting the bank out of this embarrassment. We have authorized — the board of directors — has authorized Mr. Stickney to take H. Cashman's note for yours.' Mr. Bartlett said, 'Yes, Mr. O'Connell, it is mighty nice of you to treat us this way.'" Bartlett and Wood "were interested in Industrial Finance Co." Before leaving the "bank" the defendant asked Stickney when he would get his note and was told by Stickney "that it was all right, it was paid, that he didn't need to worry about it any more, that he would get the note at the end of the month with his cancelled checks."

The defendant had seen Cashman before and after the conversation with Stickney. He saw Stickney again, and told him that Cashman had said that he had made an agreement with Stickney to take up the defendant's note by giving his note. Stickney said that was right, that the same collateral would go on Cashman's note; that the latter did not want the Virginia Food Products bonds to come on the market as "they [the Hodgdon, Cashman Company] were

the market for those bonds"; and "that as the bank was interested in Industrial Finance Co. stock it was a favorable arrangement for both; that the bank would profit by not having Industrial Finance stock on the market, and Hodgdon, Cashman Co. would profit by not having their bonds thrown on the market at that time." The defendant had acted as attorney for Cashman "who had paid him a good deal of money and who owed him a good deal of money at this time." Later, but before December, 1921, the defendant told Wood (the president of the trust company) that he had been asked again to pay his note although the Cashman note had been taken for it. Wood said that he remembered the transaction, that there had been a mistake somewhere and that the defendant would hear no more about it but that he ought to get his note back. In December, 1921, there began a series of meetings, telephone talks and letters in which the trust company and its successors, through their attorney and vice-president (not Stickney), demanded payment of the note by the defendant. Throughout these negotiations the defendant insisted that he owed nothing since Cashman's note had been accepted as payment of the defendant's obligation. There was evidence to warrant a finding that the note either of Cashman or of Hodgdon, Cashman Company had been executed and delivered to Stickney in substitution for and in satisfaction of the defendant's note.

In addition to the offices Stickney held to which reference has already been made, he was clerk of the board of directors and secretary of the executive committee of the trust company. It was the practice of this committee to approve loans or renewal of loans. Stickney took an active part in directing the affairs of the bank. He had been seen by the defendant talking with customers and "negotiating" with some of them, and had talked with the defendant about his loans and payment of the same.

The judge filed "Findings of fact and rulings of law" in which he found that Stickney took Cashman's note at the office of the trust company and told him that he would take it in payment of the defendant's note but that Stickney never

presented Cashman's note to the directors of the trust company; that there was no evidence that Stickney was granted specific authority in regard to the transaction in question, nor that there was any vote of the directors of the trust company extending his powers beyond those given the treasurer of a trust company under the banking laws, but that the trust company through its responsible officers held out Stickney as having authority to act for it in the transaction involved; that he had ostensible authority so to act; that there was nothing in the transaction to indicate that Stickney's powers were different from his powers when the original transactions and renewals thereof were consummated; that the defendant had a right to rely on Stickney's ostensible authority, and upon his representations that his (the defendant's) note had been paid, and did so rely; that otherwise he could have recovered all or most of the amount of the note by a sale of the collateral; that Stickney's interest in the Industrial Finance Company caused him to take the action he did; and that he did not disclose this interest to the directors of the trust company. The judge further found that no payment of the defendant's note had been made except by the "Cashman" note, but that by this note and its acceptance by Stickney the note of the defendant was paid.

The judge granted, among others, the following rulings requested by the plaintiff: "6. Unless the defendant proves that Mr. Stickney as treasurer of Metropolitan Trust Company had authority to accept the note of a third person in place of the defendant's note and to agree to discharge the defendant from liability, the plaintiff is entitled to recover. 7. The treasurer of a Massachusetts trust company has no implied authority by virtue of his office to discharge a note maker from liability by accepting the note of a third person. 8. Stickney as treasurer of Metropolitan Trust Company had only such authority as was conferred upon him by law, by the by-laws, or by vote of the directors. 9. The evidence does not warrant a finding that Stickney had express authority to accept the note of a third person and to release the defendant from liability on his note. 10. The evidence

does not warrant a finding that Metropolitan Trust Company through any officer thereunto duly authorized ever accepted a note of Hodgdon, Cashman Co. and discharged the defendant from liability." He refused the following requests of the plaintiff: "11. Upon all the evidence, the defendant has failed to sustain the burden of proving either payment or a novation"; "18. Upon the pleadings and the evidence, the plaintiff is entitled to recover." The plaintiff excepted to the denial of its eleventh and eighteenth requests, and to certain findings and rulings of the judge, namely, that Stickney had ostensible authority to discharge the defendant by accepting Cashman's note; "that by reason of the nature of the duties entrusted to him in the conduct of the business of the Metropolitan Trust Company he had ostensible authority to act for the bank in transactions of the kind herein described"; that "he exercised such authority in regard to the notes in renewal of which the note in suit was given and there was nothing in the present transaction which might indicate to the defendant that Stickney's powers were any different in this transaction than they had been when the original transactions and the previous renewals had been consummated"; and that "the defendant's note was paid by the acceptance of the Cashman note by Stickney and that judgment should be entered for the defendant."

The plaintiff contends that its exception to the general finding for the defendant, taken after that general finding had been made, brings before this court the question of law whether that general finding was permissible upon the subsidiary findings expressly made by the judge at the same time as the general finding. In support of that contention the plaintiff cites *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, and *Gaw* v. *Hew Construction Co.* 300 Mass. 250. The exceptional rule (*Ross* v. *Colonial Provision Co. Inc.* 299 Mass. 39, 41) laid down in those cases, namely, that a simple exception to a general finding may bring up the question of law whether that finding is legally permissible upon the subsidiary facts established, is restricted to cases where all the subsidiary facts are established and

stated, and nothing remains except to draw from them ultimate conclusions of fact and to apply the law. That exceptional rule does not apply to the present case, for here the general finding for the defendant does not purport to be a mere conclusion from the subsidiary facts expressly found, but may rest in part upon other findings upon all the evidence. The case falls within the general rule that an exception to a finding, taken after it is made, does not raise the question whether it is warranted upon all the evidence. *Stowell* v. *H. P. Hood & Sons, Inc.* 288 Mass. 555. *Baker* v. *Davis,* 299 Mass. 345, 348. *Carney* v. *Cold Spring Brewing Co.* 304 Mass. 392, 396. Neither are the subsidiary findings to be added to the evidence in considering exceptions to the refusal of rulings seasonably requested by the plaintiff that on all the evidence the defendant has failed to show payment or novation, and that the plaintiff is entitled to recover. *Burns* v. *Winchell, ante,* 276, 282.

The burden was on the defendant to prove that his note had been, as he contends, extinguished by novation. *Pearson* v. *O'Connell,* 291 Mass. 527, 529, and cases cited. See *Murray* v. *Grossman,* 289 Mass. 217, 221. The plaintiff properly concedes that it cannot now question the finding of the judge that Stickney took the note of a third person in payment of that of the defendant. That was a question of fact upon which the evidence was conflicting and the finding of the judge must stand. *Dow* v. *Poore,* 272 Mass. 223, 227.

In the absence of special circumstances or a specific authorization it must be taken that Stickney had no actual authority to accept the note of Cashman in payment of or extinguishment of the defendant's note. See Am. Law Inst. Restatement: Agency, §§ 27–72. The judge, however, found that Stickney had ostensible authority to do so and that the defendant had a right to rely upon the ostensible authority of Stickney and his representation that the note "was paid." The evidence would warrant a finding that Stickney was an active man in directing the bank's affairs. See *Lonergan* v. *Highland Trust Co.* 287 Mass. 550, 556–557. But there was more than evidence of the nature

of Stickney's duties and authority generally to show ostensible authority on his part to accept the Cashman note in place of the defendant's note. The statements made to the defendant by Wood and Bartlett, in view of their offices as president of the trust company and chairman of its board of directors, respectively, and the circumstances in which they were made, support a finding that in these special circumstances Stickney did have ostensible authority to take the Cashman note in payment of that of the defendant. Manifestly it could be found that by these statements the trust company through responsible officers held out to the defendant that Stickney had been authorized by the board of directors to enter into the transaction in question. *Neilson* v. *Malcolm Kenneth Co.* 303 Mass. 437, 441. We think it cannot be said that the findings and rulings of the judge were not influenced by this evidence. Whether Stickney was clothed with ostensible authority in the matter involved was a question of fact. *Forgeron* v. *Corey Hill Garage, Inc.* 249 Mass. 163, 166. As the determination of that fact by the judge was supported by the evidence it must stand. In its special circumstances the present case is distinguishable from *Massachusetts Hospital Life Ins. Co.* v. *Nesson,* 286 Mass. 216. In certain aspects it is like *Lonergan* v. *Highland Trust Co.* 287 Mass. 550, 556, and *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 594.

The findings by the judge that no specific or express authority was granted to Stickney to take the Cashman note in payment of the defendant's note, that Stickney did not present the Cashman note to the board of directors or disclose his action to the trust company, through the directors, are not contradictory to his finding of ostensible authority. We think that the judge, in making the findings that Stickney had not been granted specific authority in the premises, was relying upon testimony showing the absence of any record of a vote of the directors extending Stickney's powers, or of any record of a receipt by the trust company of the Cashman note, or of the payment of the defendant's note.

It is essential that, to avail himself of the principle of

apparent authority, the defendant must show that he relied
upon the manifestation of authority. *England Brothers,
Inc.* v. *Miller,* 274 Mass. 239, 242. Am. Law Inst. Restate-
ment: Agency, § 27. Such reliance was, however, found by
the judge, who also found that, in reliance upon the apparent
authority of Stickney, the defendant gave up his right to
have the collateral sold whereby he could have recovered
"the whole . . . amount of the note or a very large per-
centage of the face of the note." The evidence supports
these findings.

The plaintiff further contends that, since the judge allowed
its request for rulings to the effect that Stickney had only
such authority as treasurer as was conferred upon him by
law, by the by-laws or by vote of the directors, and that he
had no implied authority to accept the note of Cashman by
virtue of his office, the judge limited the issue of fact to
whether Stickney had actual authority to effect the substi-
tution of the notes. This argument overlooks, however,
other rulings made at the plaintiff's request, that no officer
of the bank was "duly" authorized to accept Cashman's
note for that of the defendant, and to discharge the defend-
ant. By ruling that no officer was "duly" authorized to
accept the note of Cashman in payment of the defendant's
note, we think it must be taken that the judge ruled that no
officer of the trust company was thereto authorized accord-
ing to law by a procedure perfect and regular in form and
substance. *Robertson* v. *Perkins,* 129 U. S. 233, 235, 236.
*Cromwell* v. *Slaney,* 65 Fed. (2d) 940, 942. *Brownell* v.
*Greenwich,* 114 N. Y. 518, 527.

The plaintiff asserts that the judge ruled that it was en-
titled to recover unless the defendant proved that Stickney
had "express" authority to take the Cashman note. The
record discloses, however, that the judge did not so rule,
but simply ruled that the plaintiff could recover unless
"authority" in Stickney was proved. In view of the find-
ing for the defendant it would appear that, in granting this
ruling, the judge was concerned with ostensible authority.
Other rulings of the judge dealt with the subject of specific
or express authority. We think that, rightly construed as

a whole, the rulings of the judge show no real inconsistency or error. See *DiLorenzo* v. *Atlantic National Bank of Boston*, 278 Mass. 321, 324.

*Exceptions overruled.*