JOSEPH T. MURPHY, trustee, *vs.* DAVID B. CROSBY & others (and a companion case[1]).

Essex.    December 19, 1972. — July 13, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Way,* Private: existence.    *Land Court,* Exceptions: what questions open.    *Real Property,* Easement.

In a Land Court registration case in which the decision contained some but not all the material subsidiary facts, an exception to the general finding by the judge did not raise the question whether it was warranted on all the evidence.  [405-406]

Findings in a Land Court case, that an alleged right of way was never defined or laid out on the ground and that in its only logical location on the servient land it would have been obstructed in part by a garage which had stood on that land for more than twenty years, justified a conclusion that no right of way then existed.  [406-407]

---

[1] David B. Crosby & another *vs.* Joseph T. Murphy, trustee.

PETITIONS filed in the Land Court on December 27, 1966, and January 12, 1970, respectively.

The cases were heard by *McPartlin,* J.

*Norman J. Richards* for Joseph T. Murphy, trustee.

*Robert G. Anderson* for David B. Crosby & others.

ARMSTRONG, J.   These are two related proceedings brought under G. L. c. 185. The first is a petition for registration of title to certain land in Manchester, together with a right of way easement alleged to be appurtenant thereto. The petitioner is Joseph T. Murphy, as trustee of the Cobh Realty Trust. The respondents are David D. and Lois A. Smith, the southern boundary of whose lot ("the Smith lot") abuts Murphy's; and David B. and Linda H. Crosby, the southern boundary of whose lot ("the Crosby lot") abuts the Smith lot. A portion of the northern boundary of the Crosby lot fronts on Friend Street, a public way. Murphy asserts that there is appurtenant to his lot a ten-foot right of way proceeding from his northern boundary in a northeasterly direction across the Smith lot, and then across the Crosby lot, to Friend Street. The existence of the easement is the sole question at issue.

The second proceeding is a petition by the Crosbys for confirmation of title to their lot, free of the easement claimed by Murphy, who in this case is the party respondent. As in the first case, the sole question at issue is the easement.

The cases were tried together. The Land Court determined that "there is no way now appurtenant to . . . [the Murphy lot] over . . . [the Smith and Crosby lots] which may be used for the purposes of ingress and egress from [the Murphy lot] . . . to Friend Street." Murphy filed both a bill of exceptions and an appeal in each case.

There is no indication in the exhibits, which are before us in the record on appeal by virtue of their incorporation in the decisions (*Marshall* v. *Francis,* 327 Mass. 702, 703 [1951]), or in the testimony, which is incorporated in the outline bill of exceptions, as to how the easement in question, if it ever existed in law, was created. It is mentioned in a deed dated February 28, 1856, from one

Jacob Cheever to John Knight, Jr., both predecessors in title to Murphy, and is described therein as "a privilege to pass and repass over land of the late D. L. Bingham." It is also referred to in a deed dated April 26, 1871, from Henry T. Bingham, successor in title to D. L. Bingham, to Thomas Ray, all predecessors in title to the Smiths and Crosbys. That deed recites: "The premises are however conveyed subject to the privilege of a right of way with teams and otherwise to the back land formerly Jacob Cheevers and other portions of said Bingham orchard." In May, 1946, the Bingham land was divided by heirs of Thomas Ray into two lots, one fronting on Friend Street (the Crosby lot) and the other without frontage (the Smith lot), and at that time they created by deed a right of way for a driveway over the Crosby lot in favor of the Smith lot.

There was testimony by one Gillis to the effect that in the fall of 1946, he helped in the construction of a garage which remains on the Smith lot and which has access to Friend Street by the driveway over the Crosby lot.

Gillis also testified that he resided very near the Murphy lot from 1914, when he was a child, to 1930; that the Murphy lot was used as a cow pasture until some time in the 1920's; and that at no time did he see any evidence of use of the right of way in question by owners of the Murphy lot, but rather their means of access was from Elm Street on the southerly side of the Murphy lot. There was testimony by Gillis, which, while appearing unclear in the transcript, tended to establish that no tracks from the northerly border of the Murphy lot towards Friend Street could be seen at the time the Smith garage was built.

One Hancock, a civil engineer and registered land surveyor, who had purported to locate the disputed right of way on the plan filed by Murphy, testified as to his reasons for doing so. In essence, he found an old gate post on the northerly boundary of the Murphy lot; concluded that the right of way ran on the northwest side of it rather than on the northeast side due to the "precipitous" downward slope of the land off to the northeast side; determined that the right of way should be ten feet wide to accommodate teams

without trespassing off the way; and apparently assumed that the way would have taken a straight course from the gate to Friend Street, entering the street at the same location as the Smith driveway.

Thus located, the claimed right of way could converge with the Smith driveway at Friend Street, but its centerline as it travels south towards the Smith lot and then to the Murphy lot would gradually diverge towards the west away from the centerline of the Smith driveway. For this reason the disputed right of way would not run directly through the Smith garage, but rather the westerly side of the Smith garage would obstruct the easterly side of the disputed right of way to the extent of four or five feet.

Gillis testified that his father was the one who dug the hole for the gatepost, that it was placed in about 1914, and that the reason for locating it there was that the ground at that spot was easy to dig.

Murphy's petition for registration was filed December 27, 1966.

The trial judge found that the location of the way referred to in the deed of 1856 from Jacob Cheever ". . . was never defined or laid out on the ground; that the evidence does not warrant a finding that such way was ever laid out for the purposes for which it was created; that the location of the way as shown on [Murphy's] plan is the only logical location for the way due to the physical configuration of the surrounding area; . . . that for over twenty years prior to the filing of the petition the garage has been located within the limits of the claimed way; and that there is no way now appurtenant to . . .[Murphy's] land . . . which may be used for the purpose of ingress and egress from the [Murphy lot] . . . to Friend Street."

Murphy submitted no requests for rulings with respect to the sufficiency of the evidence to warrant any particular findings. His sole exception in each of the two cases is to the court's "ruling . . . in its decision" that the easement does not now exist. Each decision included some findings of fact, but those findings do not purport to constitute all material subsidiary facts on which the decision is based. This is not a

case, therefore, in which "an exception to a general finding brings before us the question of law whether it was permissible on the subsidiary facts established." *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 167 (1936). Rather, it "falls within the general rule that an exception to a finding, taken after it is made, does not raise the question whether it is warranted upon all the evidence." *Federal Natl. Bank* v. *O'Connell,* 305 Mass. 559, 565 (1940). *Muir Bros. Co.* v. *Sawyer Constr. Co.* 328 Mass. 413, 414-415 (1952). *Mastercraft Wayside Furniture Co.* v. *Sightmaster Corp.* 332 Mass. 383, 386-387 (1955).

Under G. L. c. 231, § 96, made applicable to Land Court cases by c. 185, § 15, this appeal "brings to this court nothing but the correctness in point of law of an 'order decisive of the case' which is 'founded upon matter of law apparent on the record.' If an order is not founded exclusively upon matter of law, but depends in part upon the decision of a question of fact or discretion, appeal is of no avail." *Harrington* v. *Anderson,* 316 Mass. 187, 191 (1944). The Land Court's decision is part of the record, and findings of fact contained therein can be considered on appeal. *Harrington* v. *Anderson, supra,* at 192. But the decision "must stand unless error appears from an examination of the decision itself." *Marshall* v. *Francis,* 327 Mass. 702, 703 (1951).

By his finding that the way was never laid out, the judge rejected the possibility that a right of way had been created by prescriptive use. The correctness of that finding is not before us. If the disputed right of way ever existed, therefore, it must have been either expressly or impliedly created by a grant in writing. *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 58 (1938). It could not have been created by any of the deeds in Murphy's chain of title which were introduced in evidence or referred to in the report of the title examiner, since there was no evidence that any predecessor in title of the Smiths or Crosbys was a party thereto. Nor could it have been created by the 1871 deed in the Smith-Crosby chain of title, to which Murphy's predecessors in title were not parties. *Edwards Hall Co.* v.

*Dresser,* 168 Mass. 136, 138 (1897). No evidence was offered of any other deed or other writing by which the alleged easement might have been created. The trial judge made no finding from which by necessary implication he may be said to have found that the easement ever existed. His ruling that it does not now exist, "not [being] inconsistent with any of the specific facts found by him, must stand." *Marshall* v. *Francis,* 327 Mass. 702, 705 (1951).

The exceptions are overruled and the decisions are affirmed in both cases.

*So ordered.*