Demetrios B. HASEOTES, Appellant,

v.

CUMBERLAND FARMS,
INC., Appellee.

No. CIV. A. 00–40120–EFH.

United States District Court,
D. Massachusetts.

Jan. 31, 2001.

Stephen Wald, Craig & Macauley, P.C., Whitton E. Norris, III, Davis, Malm & D'Agostine, P.C., William F. Macauley, Craig and Mcauley, Boston, MA, for Demetrios B. Haseotes, Appellants.

Patrick P. Dinardo, Sullivan & Worcester, LLP, Pamela S. Holleman, Sullivan & Worcester, Patrick P. DiNardo, Sullivan and Worcester, Boston, MA, for Cumberland Farms, Inc., Appellees.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Appellant Demetrios B. Haseotes is before this Court appealing a decision by the United States Bankruptcy Court for the District of Massachusetts in favor of Appellee Cumberland Farms, Inc. ("CFI"). At issue is whether the Bankruptcy Court erred in disallowing proofs of claim filed by Haseotes in CFI's bankruptcy proceedings based on its finding that Haseotes breached his fiduciary duty of loyalty and fair dealing to CFI. After hearing oral argument on the matter, this Court affirms the Decision and Order of the Bankruptcy Court.

Haseotes is the eldest of seven children who together own all of the shares in CFI, a highly profitable family business begun by their parents in 1938. Haseotes served as CFI's Chairman of the Board of Directors and Chief Executive Officer from 1960 until the late 1980s when he was asked to step down from those positions. Since then, and at all relevant times, Haseotes has remained on the Board of Directors and has served as an "executive employee" of CFI.[1] In May, 1992, CFI submitted to the Bankruptcy Court a petition for reorganization under Chapter 11. Eighteen months later, Haseotes submitted two proofs of claim for prepetition indebtedness owed on CFI promissory notes.[2] In 1998, when CFI's reorganization was complete, Haseotes sought payment on his proofs of claim. CFI objected, based on a setoff claim against Haseotes arising from his decisions to have his wholly-owned corporation, Cumberland Crude Processing, Inc. (CCP), repay debts it owed to him and to others, rather than to repay sizable overdue debts it owed to CFI. CFI claimed that a 1988 subordination agreement between CCP and CFI required that as long as CCP was in default on debts owed to

---

1. Currently, CFI's shareholders are in dispute as to the composition of its board and are amidst deadlock proceedings in the Delaware Chancery Court.

2. CFI did not dispute its basic liability under the notes, but challenged the amount of the claims and the obligation to pay them at all in the face of setoff claims.

CFI, CCP would not, directly or indirectly, make payment on its existing note to Haseotes "or any substitution or additional promissory note." CFI further claimed this contractual obligation only formalized Haseotes' inherent duties as a fiduciary to prioritize repayment to CFI. Following a three-day evidentiary hearing, the Bankruptcy Court ruled that by reason of CFI's valid setoff claim against Haseotos in the amount of $5,753,179.05, which exceeded Haseotes' allowable claims totaling less than $2.949 million, CFI owed Haseotes nothing on his proofs of claim, and, in fact, has a net claim against Haseotes in the amount of at least $2.804 million.

Haseotes argues that Judge Queenan was in error in finding that Haseotes breached his fiduciary duty of loyalty and fair dealing to CFI, which gave rise to CFI's setoff claim, and in barring Haseotes' statute of limitations defense. Haseotes claims he did not owe CFI a fiduciary duty with respect to his separately owned businesses, but, even if he did, the decisions he made regarding CCP were good faith business decisions made with CFI's best interests in mind. Further, Haseotes urges that CFI was aware of the repayments by CCP when they were made in 1992 and 1993. As a result, CFI is barred by the statute of limitations from even raising its setoff claim, as the three-year period for bringing such a claim expired well before it was raised in the Bankruptcy Court in 1999.

■ This Court reviews factual findings of the Bankruptcy Court for clear error and reviews conclusions of law *de novo*. *See In re Strangie*, 192 F.3d 192, 194 n. 1 (1st Cir.1999) citing *Adams v. Coveney*, 162 F.3d 23, 25 (1st Cir.1998). As noted by the appellant, this Court, under Fed. R.Bank.P. 8013, must determine not whether it would have made the findings the trial court did, but whether after reviewing the evidence it is "left with the definite and firm conviction that a mistake has been committed." *In re GSF Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991), quoting

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *In re Green*, 934 F.2d 568, 570 (4th Cir.1991), citing *United States v. U.S. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The Court of Appeals for the First Circuit has stated, "[t]he bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which a [discretionary] decision entails." *In re I Don't Trust*, 143 F.3d 1, 4 (1st Cir.1998) quoting *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987).

Indeed, Judge Queenan has been "on the front line" throughout the lengthy court battle between Haseotes and CFI. The dispute over the setoff claim now before this Court represents the culmination of nearly eight years of proceedings in front of Judge Queenan in the Bankruptcy Court. Judge Queenan's intimate knowledge of the details of this case is reflected in his meticulous, well-reasoned, thirty-one page Decision and Order. His thorough presentation and analysis of the facts, and his sound application of the law, do not leave this Court "with a definite and firm conviction that a mistake has been committed." *In re GSF Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991), quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *In re Green*, 934 F.2d 568, 570 (4th Cir.1991), citing *United States v. U.S. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Consequently, this Court adopts Judge Queenan's findings of fact and recites herein only those facts relating to the ultimate issue of the debt repayments by CCP.

■ Judge Queenan correctly relied on Massachusetts law in defining the wide parameters of a fiduciary's duty of loyalty.

> The directors of a corporation stand in a fiduciary relationship to the corporation. . . . They owe to the corporation both a duty of care and . . . a paramount

duty of loyalty.... They are bound to act with absolute fidelity and must place their duties to the corporation above every other financial or business obligation.... They cannot be permitted to serve two masters whose interests are antagonistic.

*Demoulas v. Demoulas Super Markets, Inc.,* 424 Mass. 501, 677 N.E.2d 159, 179–80 (Mass.1997).

■ Although Judge Queenan noted that the present case does not fit squarely within the traditional category of the corporate opportunity doctrine at issue in *Demoulas,* he correctly invoked its articulation of the breadth of the principles governing a fiduciary's duty of loyalty:

> [C]orporate directors and officers are bound by their duty of loyalty to subordinate their self-interests to the well being of the corporation. A person who owes a fiduciary duty to a corporation is prohibited from taking, for personal benefit, an opportunity or advantage that belongs to the corporation.... In selecting a test for determining which ventures rightfully belong to a corporation, and are subject to the corporate opportunity doctrine, the corporation deserves broad protection. Rather than limiting the doctrine's coverage only to those instances where the proposed venture is demonstrably similar to existing and prospective corporate activities, the focus is on the paramount obligations of the fiduciary. In keeping with this principle ... "the true basis of the governing doctrine rests fundamentally on the unfairness in the particular circumstances of a director, whose relation to the corporation is fiduciary, 'taking advantage of an opportunity [for his personal profit] when the interests of the corporation justly call for protection. This calls for the application of ethical standards of what is fair and equitable ... [in] particular sets of facts.' " [citation omitted]. This "fundamental fairness" test places the burden on the fiduciary who acquires a corporate (or

partnership) opportunity, or who engages in self-dealing, "to prove that his or her actions were intrinsically fair, and did not result in harm to the corporation or partnership." [citations omitted].

*Demoulas,* 677 N.E.2d at 180.

■ Judge Queenan found the dispute between Haseotes and CFI factually similar to *Zimmerman v. Bogoff,* 402 Mass. 650, 524 N.E.2d 849 (Mass.1998), which involved a corporation owned in equal shares by a plaintiff and defendant, each of whom also owned separate businesses. The defendant was in charge of the jointly-owned finances. When the corporation ran into financial difficulties, the defendant caused it to pay debts owed to his companies, but not to the plaintiff's companies. The court looked to the fiduciary obligations which shareholders of a close corporation owe to each other. In summary fashion, the court concluded that the defendant had violated these obligations, stating, "In his position as 'control[ler] of the purse strings of the enterprise,' [defendant] caused [the jointly-owned corporation] to withhold from [plaintiff's corporation] substantial sums which were legitimately due.... This was a clear breach of fiduciary duty." *Id.* at 855. Judge Queenan ruled that there is no significant difference between the fiduciary duties owed each other by shareholders of a close corporation and the fiduciary duties owed by a director to his corporation, and that in *Zimmerman* and *Demoulas,* the Supreme Judicial Court has made clear the principles of fundamental fairness that define the law of fiduciary duty.

The appellant breached his fiduciary duty to the appellee based on the principles of fundamental fairness. Appellant chose to purchase CCP, and although he told his siblings that they or CFI would somehow benefit from its operation, Judge Queenan found that they had no legally enforceable rights to the profits from, or ownership interest in, the corporation, as

appellant was the sole beneficiary of CCP. The acquisition of CCP proved a financial disaster and CFI suffered major financial consequences as a result. These facts alone might not have amounted to a breach of fiduciary duty if the purchase and operation of CCP had been financed solely with appellant's funds. However, CFI was a principal financier of CCP. Appellant's decisions, from which only he stood to gain, left CFI in the position of being a large creditor of an untried and risky enterprise. More significantly, appellant was bound—by both contract and fiduciary duty—to subordinate his personal interests to the interests of CFI with respect to the repayments of the loans. Judge Queenan characterized appellant's conduct in seeking his own financial interests at CFI's expense "deplorable" and this Court cannot conclude that it was error for him to hold that appellant's decisions to cause CCP to repay him and his shipping companies, rather than to repay CFI, was a breach of his fiduciary duty of loyalty to CFI.

Next, the appellant contends that the Bankruptcy Court erred in even allowing appellee's setoff claim because the applicable three-year statute of limitations had expired. Judge Queenan heard oral argument on the matter and from the bench denied appellant's motion to dismiss for two independent reasons: the tolling provision in the reorganization plan and the motion's timeliness. In his written Decision and Order, Judge Queenan also articulated a third ground for denial of the motion: *res judicata.*

Judge Queenan ruled that despite appellant's insistence that CFI learned of CCP's loan repayments to him in 1993, which would trigger the running of the statute of limitations and would require that setoff claims be brought by 1996, a tolling of the

statute preserved such setoff claims so that they were timely raised in 1999. According to the tolling provision found at Article 6.1(e)(9)(C) of CFI's reorganization plan, the three year statute was tolled from December 30, 1993, the effective date of the plan, to December 31, 1998, when payment of Class 12 Certificates of Indebtedness had been made in full.[3]

■■■ Appellant is correct in urging that he and CFI never executed the specific tolling agreement contemplated in the reorganization plan, but Judge Queenan ruled, in unequivocal terms, that appellant was obligated to execute such a tolling agreement. Appellant cannot escape tolling of the statute on the ground that no agreement was formally executed because the terms of the agreement were clear and binding in the reorganization plan. Judge Queenan correctly recognized the equitable maxim which treats as done that which should be done. *See, e.g., Independent Wireless Telegraph Co. v. Radio Corp.,* 269 U.S. 459, 473, 46 S.Ct. 166, 70 L.Ed. 357 (1926); *Camp v. Boyd,* 229 U.S. 530, 559, 33 S.Ct. 785, 57 L.Ed. 1317 (1913)("Equity regards that as done which ought to be done. It looks to the true intent and meaning rather than the form."); *Institut Pasteur v. Cambridge Biotech Corp.* (*In re Cambridge Biotech Corp.*), 186 B.R. 9, 16 (Bankr.D.Mass.1995), *aff'd,* 212 B.R. 10 (D.Mass.1997), *aff'd,* 186 F.3d 1356 (Fed. Cir.1999); *Morris Gordon & Son, Inc. v. Totoni,* 324 Mass. 182, 185–86, 85 N.E.2d 319 (Mass.1949); *Lonergan v. Highland Trust Co.,* 287 Mass. 550, 559, 192 N.E. 34 (Mass.1934). This Court agrees with Judge Queenan that the maxim has extra force in this case because of the heavy fiduciary obligations imposed on Haseotes as a director to be fair in his dealings with CFI. Therefore, the failure to execute a separate, written tolling agreement does

---

**3.** The pertinent part of Article 6.1(e)(9)(C) states:

  D.B. Haseotes and the D.B. Haseotes-related entities will agree to enter into a tolling agreement with respect to the statute of

limitations relating to any such allegedly improper payments, which tolling agreement will expire on the date the Class 12 Certificates of Indebtedness have been paid in full.

not negate its obligations as required under the reorganization plan.

Judge Queenan found that appellant voted in favor of the plan and thereby consented to the tolling provision of the plan. Further, he was represented by two attorneys who reviewed the plan on his behalf. Having received proper notice of the confirmation process, and having failed to object to any of its provisions, confirmation of the plan binds him under principles of *res judicata*. As a result, the statute of limitations was tolled on December 30, 1993, the effective date of plan confirmation, until it began running again on December 31, 1998, the date by which all Class 12 Certificates of Indebtedness were to be paid in full.

 In reviewing the denial of appellant's motion to dismiss based on a statute of limitations defense, this Court rules the motion properly denied based on the tolling provision of the reorganization plan. As a result, we need not reach the issue of the timeliness of the filing of the motion, which was an independent basis for Judge Queenan's decision. However, both the rules[4] and the case law dictate the denial of appellant's motion to dismiss because a statute of limitations defense should be pleaded in a timely manner. *See, e.g. Venters v. City of Delphi*, 123 F.3d 956, 968–69 (7th Cir.) (court "must not countenance attempts to invoke [statute of limitations] defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff"); *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers—Local 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1396 (6th Cir.1989) (defense untimely when

plead long after action was initiated); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155–56 (2d Cir.1968) (defense of limitations must be pleaded at earliest possible moment); *Peckham v. Ronrico Corp.*, 211 F.2d 727, 731 (1st Cir.1954) (statute of limitations defense raised too late where party initially asserted only *laches* in defense to motion); *Perlmutter v. Shatzer*, 102 F.R.D. 245, 246 (D.Mass.1984) (limitations defense waivable if not raised timely); *Steiner v. City of New York*, 920 F.Supp. 333, 342 (E.D.N.Y.1996) (statute of limitations defense is affirmative and must be asserted at earliest possible moment and is waived if not promptly pleaded).

Here, appellant raised his affirmative defense for the first time on the first day of trial. Such a motion cannot be considered timely and a decision to grant the motion would have resulted in unfair prejudice to the appellee. *See Keeler v. Hewitt*, 697 F.2d 8, 14 (1st Cir.1982) (finding that although court has discretion to allow amended pleadings, deriving opposing party of the opportunity to do appropriate legal research on eleventh-hour defense constitutes prejudice, and the trial court acts within its discretion in refusing to allow amendment to include defense).

Accordingly, the Decision and Order of the United States Bankruptcy Court for the District of Massachusetts is affirmed.

SO ORDERED.

---

4. The rule provides:

> In any opposition to a motion, the opposing party shall admit or deny each allegation of the motion, state any affirmative defense to the motion, and state specifically why the relief requested in the motion should not be granted.

M.L.B.R. 9013–1(j).

Further, pursuant to Fed.R.Bank.P. Rule 7008(c), the statute of limitations is a waivable defense which must be raised in the first responsive pleading. Rule 7008(c) provides, in pertinent part:

> (c) Affirmative Defenses: In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense.