SPRINGFIELD STATE BUILDING CORPORATION *vs.* MASSA-CHUSETTS MUTUAL LIFE INSURANCE COMPANY.

Hampden.   May 17, 1934. — June 29, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Mortgage,* Of real estate: construction, provision with respect to partial release. *Contract,* Covenant running with land.

A provision in a mortgage of real estate, "In the event that said mortgagor shall sell a portion of the . . . [mortgaged] premises, the mortgagee shall release the portion so sold from the lien of this mortgage upon payment by said mortgagor of a sum to be mutually agreed upon by said mortgagor and mortgagee," by its terms was personal to the mortgagor, was not intended by the mortgagor and mortgagee to run with the land, and therefore did not run with the land.

The omission of the word "assigns" in the provision above quoted had a particular significance in view of the fact that the next preceding provision of the mortgage was to the effect that certain items should be deemed to be valid between the parties to the mortgage "and their successors in interest."

One, to whom the mortgagor above mentioned sold the mortgaged premises subject to the mortgage and who did not agree to assume and pay the mortgage note or to perform any of the obligations of the mortgagor, nor otherwise obligate himself with respect to the mortgage and mortgage note, could not enforce the quoted provision in a suit in equity, commenced against the mortgagee after there had been default in both principal and interest under the mortgage note, for the reason that such provision was personal to the mortgagor and did not run with the land, irrespective of whether it could be enforced after such default and of whether it could be enforced in view of the fact that it left the amount to be paid to the mortgagee for a partial release "to be mutually agreed upon."

There was no inconsistency in a ruling in the suit in equity above described, that the plaintiff could not enforce the quoted provision because it was personal to the mortgagor, and a finding and ruling "that the plaintiff's relations to the mortgagor are such . . . as to affect . . . [him] with the mortgagor's default" in payments required by the mortgage note.

BILL IN EQUITY, filed in the Superior Court on May 29, 1933, and afterwards amended, described in the opinion.

The defendant's answer contained prayers for the relief which was given to the defendant by the final decree. The suit was heard by *Broadhurst*, J. Material findings and rulings by the judge, and the final decree ordered by him, are described in the opinion. The final decree was entered by order of *W. A. Burns*, J. The plaintiff appealed. The evidence was reported.

*R. C. Evarts*, for the plaintiff.

*F. H. Chase*, (*R. P. Baldwin* with him,) for the defendant.

PIERCE, J. This is a suit in equity wherein the plaintiff asks the court in effect to determine for the parties what sum they ought to agree upon, and the plaintiff ought to pay and the defendant to accept for a partial release from a mortgage, held by the defendant upon real estate said to be owned by the plaintiff, of a portion of the premises described in said mortgage. The judge dismissed the suit and the case is before this court on appeal by the plaintiff.

The pertinent facts found by the trial judge are in substance as follows: On February 1, 1928, the defendant sold and conveyed to The Republican Company, a domestic corporation, certain land with the building thereon located at the corner of Main and State streets in the city of Springfield, Massachusetts, and by this same deed conveyed certain other land adjoining on the west of State Street and extending to Bliss Street for the sum of $925,000. The Republican Company paid $800,000 of this sum by its note of February 1, 1928, secured by a first mortgage upon the entire real estate, which was described in both deed and mortgage as one parcel. By the terms of this note The Republican Company promised to pay interest at the annual rate of five per cent on the first days of February

and August, and to pay the principal of said note in instalments, the first of which was to be $25,000, payable February 1, 1933. The sale on these terms was approved by the commissioner of insurance of the Commonwealth (see G. L. [Ter. Ed.] c. 175, §§ 63 [7], 65, 66).

The mortgage deed contains this language: "In the event that said mortgagor shall sell a portion of the aforesaid premises, the mortgagee shall release the portion so sold from the lien of this mortgage upon payment by said mortgagor of a sum to be mutually agreed upon by said mortgagor and mortgagee."

On June 12, 1930, The Republican Company conveyed the mortgaged premises to the plaintiff, subject to the mortgage. The plaintiff's deed does not contain any promise or agreement on its part to assume and pay the mortgage or to perform any of the obligations of the mortgagor, and the plaintiff has not signed any collateral or guarantee note or otherwise in any manner obligated itself in respect to the mortgage or note.

The plaintiff was incorporated under the laws of this Commonwealth in May, 1930, "to acquire by purchase . . . lands or any interest therein; to erect . . . buildings . . . on any land of the company . . . ." Its incorporators were employees of The Republican Company. The plaintiff's authorized capital is five thousand shares without par value, none of which has ever been issued. The plaintiff paid nothing and furnished no consideration for the conveyance. The real estate conveyed by the defendant to The Republican Company and conveyed by the latter to the plaintiff is bounded easterly by Main Street about eighty-six feet, northerly by State Street about three hundred twelve feet, westerly by other owners about two hundred seventeen feet, and southerly by Bliss Street nearly one hundred sixty-nine feet. A portion of the mortgaged premises, bounded easterly by Main Street eighty-six feet and northerly by State Street one hundred ninety feet, had been occupied since 1908 by an eight-story office building which the defendant erected. In the years 1919–1922 the defendant acquired, in five separate parcels,

the remainder of the estate later sold to The Republican Company, and soon after acquiring the additional land on State and Bliss streets razed the buildings thereon, and all said additional land, which was vacant at the time of the sale to The Republican Company, remained vacant until built upon by that company.

In the spring or summer of 1927, the defendant put the entire property on the market and The Republican Company shortly thereafter entered upon negotiations for its purchase. These negotiations were conducted for The Republican Company by one Sherman H. Bowles with William W. McClench, then president, and with other officers of the defendant. It was contemplated by both parties that the buyer would probably build on the vacant land, and during the preliminary negotiations Bowles inquired what sum would be required for a partial release thereof in that event. McClench said that his company would probably require that about $187,000, representing the net cost of the vacant land, be paid, but Bowles said that his principal could not agree to pay what the vacant land had cost the defendant; and no agreement relative thereto was reached. On October 1, 1927, the negotiations culminated in the execution of a written agreement for sale and purchase on the terms which were subsequently carried out. The only reference in this contract to a partial release is in these words: "The party of the first part further agrees that the mortgage herein referred to, to be given as part consideration of the purchase price, shall provide that in the event that party of the second part shall sell a portion of the premises, that a partial release of mortgage shall be given by party of the first part upon the payment therefor of a sum to be mutually agreed upon by said parties."

Pursuant to this agreement The Republican Company immediately took possession of the building and began making extensive alterations and improvements, and as a result it secured many new tenants. It erected a garage building on the Bliss Street side of the premises, and refunded the cost of its erection by borrowing $125,000 from a local savings bank. In January, 1929, The Republican

Company began the erection on the State Street land of a store and office building. This building, called the new State Building, has a frontage on State Street of about one hundred sixty-three feet, and a depth of about seventy feet. Its easterly wall is built about thirty and one half feet easterly of the west wall of the old office building, and rests, in part, on massive steel, brick and concrete pillars which are built about through the center of the defendant's former engine and machinery room. The cost of the building was refunded out of the proceeds of a loan of $400,000 made by a local trust company. The judge finds that "The Republican Company began and completed the erection of the Auto Park Garage and the new State Building knowing that it had not agreed with the defendant upon a sum to be paid for a partial release of the land occupied by them"; that "No false or fraudulent representations of any kind were made by the defendant to The Republican Company as an inducement to its proceeding as it did"; and that the defendant "never agreed that the partial release clause should be construed as entitling the mortgagor or the plaintiff to a partial release only of the so called vacant land." In the summer of 1930, Bowles again took up with the defendant the matter of a partial release, mentioning $100,000 as the price to be paid, but this offer was declined as inadequate.

According to the terms of the note The Republican Company was obligated to pay the defendant on February 1, 1933, an instalment of $25,000 on account of principal. The Republican Company did not pay this amount when due and was in default after February 1, 1933, not only for this instalment of principal but also for a balance of interest. The defendant never agreed to postpone payment of the instalment of principal that came due February 1, 1933, and never did anything amounting to a waiver of, or to estop itself from, asserting the right to the payment when due. On May 8, 1933, the defendant entered upon the mortgaged premises for the purpose of foreclosing its mortgage and caused a certificate of such entry to be duly recorded. On May 11, 1933, it notified The Republican

Company that, because of the default in the payments due on the note, it demanded payment of the whole principal. When the plaintiff's bill in equity was filed the mortgage was in default on the whole amount of the note and arrears of interest. Thereafter, on May 23, 1933, the plaintiff made a written offer of $100,000 "for a release of all the land with buildings thereon, not occupied by the building numbered 1200 Main Street." It is noted that the new State Building had been so constructed that thirty and one half feet of the basement of the original building had been cut off. No other offer was made, but the amended bill alleges that the plaintiff and its predecessor in title, The Republican Company, have been and now are ready, willing and able to pay for a release the sum of $100,000, or any other sum which the court may find to be reasonable, as representing the fair value or fair mortgage value of the vacant land now occupied by the new State Building and the Auto Park Garage. The above facts were found by the judge and are not in dispute. The Republican Company is not a party to these proceedings.

The plaintiff's bill was dismissed with costs. The decree further ordered that the plaintiff pay to the defendant the amount of rents collected by the plaintiff since the defendant's entry, and enjoined the plaintiff from interfering with the defendant's possession under its mortgage and from collecting the rents and profits.

Passing the defendant's appeal from the interlocutory decree denying its motion to dismiss the plaintiff's appeal for want of due prosecution, we proceed at once to a consideration of the case made by the plaintiff, on its merits. The main issue as posited by the plaintiff is, Can the partial release clause be resorted to by the plaintiff? The defendant contends that the plaintiff cannot resort to the partial release clause in the mortgage because it was a personal agreement between the defendant and the mortgagor. The plaintiff contends that it can do so because the clause is a covenant which runs with the land.

We assume in favor of the plaintiff that a provision of partial release contained within a mortgage, in form a

deed poll, is a covenant which binds the mortgagee and is of such a nature that it may run with the land, *Bronson* v. *Coffin,* 108 Mass. 175, 186; see *Kennedy* v. *Owen,* 136 Mass. 199, 201; compare *Whittenton Manuf. Co.* v. *Staples,* 164 Mass. 319, 328; *Rugg* v. *Record,* 255 Mass. 247, 251, but in order to be a covenant running with the land it must also appear that the parties intended that the covenant should run with the land. *Peters* v. *Stone,* 193 Mass. 179, 185, 186. *Bennett* v. *Sheinwald,* 252 Mass. 23, 28. *Masury* v. *Southworth,* 9 Ohio St. 340, 347.

In the case at bar the agreement of partial release contained in the mortgage is not with the mortgagor or his assigns. Some jurisdictions attach no importance to the omission of the word "assigns." *Vawter* v. *Crafts,* 41 Minn. 14. *Title Ins. Co.* v. *Cowan Lumber Co.* 226 Ala. 485, 486. Jones, Mortgages of Real Property (8th ed.) Vol. 1, § 98. Other jurisdictions consider the absence of the word "assigns" as important evidence of an intention of the parties not to make the covenant run with the land. *Squier* v. *Shepard,* 11 Stew. (N. J.) 331, 334, 335. *Pierce* v. *Kneeland,* 16 Wis. 672, 678. *Gilman* v. *Forgione,* 129 Maine, 66. See *Clarke* v. *Cowan,* 206 Mass. 252, 253, 255, where the grantee agreed to "release and quitclaim any lot upon the payment of $150 per lot of 7,000 sq. ft.," and it was held that the agreement "was with the mortgagor, not with him and his assigns, and must be regarded, therefore, as a personal agreement for his benefit and not for the benefit of any one claiming through or under him." See, also, in affirmation *Rugg* v. *Record,* 255 Mass. 247. In the present case it is not necessary to determine whether *Clarke* v. *Cowan, supra,* and *Rugg* v. *Record, supra,* hold that where the word "assigns" is omitted in a partial release clause in a mortgage the covenant is personal as matter of law. If it be assumed, as the plaintiff contends, that these cases hold that whether the covenant runs with the land is largely a matter of intention, and upon the facts found in *Clarke* v. *Cowan* the intention of the parties indicated that the covenant be personal between the parties, the plaintiff is nevertheless not aided. The omission of the word "as-

signs" in the provision under consideration has particular significance in view of the fact that in the very sentence (preceding the release clause) relating to liens, claims, taxes, assessments or tax title so purchased, paid, or redeemed by the mortgagee, the agreement is that these items are to be deemed valid between the parties "and their successors in interest." It is not necessary to resort to other parts of the instrument to determine the intention of the parties. The language of the covenant is unmistakable. It specifies that in the event "said mortgagor" shall sell a portion of the aforesaid premises, "the mortgagee" shall release the portion "so sold" from the lien of the mortgage upon payment by "said mortgagor" of the sum "to be mutually agreed upon by said mortgagor and mortgagee." Such an agreement or covenant is personal to the mortgagor. *Gilman* v. *Forgione*, 129 Maine, 66. *Dimeo* v. *Ellenstein*, 106 N. J. Eq. 298. *Torrey* v. *Blair*, 108 N. J. Eq. 82.

The plaintiff contends that the judge was inconsistent in ruling that the "partial release clause in this mortgage was a personal agreement with the mortgagor, and as such cannot be resorted to by this plaintiff," and then finding and ruling "that the plaintiff's relations to the mortgagor are such, notwithstanding it is a different corporation, as to affect it with the mortgagor's default." The plaintiff's contention is that if its relations with the mortgagor were such as to affect it with the mortgagor's default then it can resort to the partial release clause because it has the rights of the mortgagor. There is nothing in this position.

We are of opinion that the circumstances which preceded and were attendant upon the delivery of the deed show a clear intention that the partial release covenant should be a personal covenant not running with the land. We, therefore, find that there is no occasion to consider the contention of the defendant that the covenant could not be enforced by the mortgagor, or by the plaintiff, after a default in both principal and interest, if we were to assume that a covenant running with the land could be enforced after default at any time before there is a complete foreclosure of the mortgage, as the plaintiff contends. See

*Reed* v. *Jones,* 133 Mass. 116; *Clark* v. *Fontain,* 135 Mass. 464; *S. C.* 144 Mass. 287; *Clarke* v. *Cowan,* 206 Mass. 252; *Harris Realty Co.* v. *Epstein,* 266 Mass. 366, 369; *Pierce* v. *Kneeland,* 16 Wis. 672; *Gilman* v. *Forgione,* 129 Maine, 66. Nor do we consider the contention of the defendant that equity will not specifically enforce an agreement, any vital feature of which is left to future negotiations. See *Conos* v. *Sullivan,* 250 Mass. 376.

The final decree includes items of rent collected by the plaintiff for March, April and May preceding May 8, 1933, and items of rent for those months not separated from collections rightly made after May 8, 1933. These collections are included in the sum of $3,846.30 which the plaintiff is ordered to pay the defendant. These errors should be corrected and the amount found deducted from the sum ordered paid. The final decree thus modified is affirmed with costs.

*Ordered accordingly.*