JOHN M. DUFF & others *vs.* UNITED STATES TRUST COMPANY & others.

Middlesex.    January 2, 1951. — February 9, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract,* For partial release. *Frauds, Statute of. Mortgage,* Of real estate: partial release. *Surety. Sale,* Transfer of possession. *Real Property,* Possession.

An oral agreement by a mortgagee with the mortgagor prior to execution of the mortgage to give a partial release of any of the lots into which the mortgaged premises were subdivided as such lot was sold by the mortgagor was unenforceable by reason of the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth, was not made for the benefit of the purchaser of such lot, and became ineffective upon a default under the mortgage.

A release by a mortgagee of a part of the mortgaged premises did not discharge from the mortgage another part which the mortgagee then knew the mortgagor had contracted to convey upon completion by him of a house thereon for the prospective purchaser.

One who had contracted to purchase a house and land and had made a deposit therefor was not entitled to possession of the premises before he obtained a conveyance unless the contract provided for such earlier possession.

BILL IN EQUITY, filed in the Superior Court on January 28, 1949.

The suit was heard by *Beaudreau,* J., on a master's report. The plaintiffs appealed from a decree dismissing the bill as to the defendant United States Trust Company and restraining the plaintiffs Duff and Shute from trespassing upon property of that defendant as prayed for in its counterclaims.

*J. M. Bashaw,* (*A. J. Slater* with him,) for the plaintiffs.

*J. M. Graham,* for the defendant United States Trust Company.

LUMMUS, J. The facts as reported by the master are substantially as follows. Shortly before August 21, 1947, Reidar L. Norstern and his wife, owning a tract of nearly thirteen acres in Wakefield, divided it into forty-seven house lots, on each of which they proposed to build a house. They negotiated with the defendant United States Trust Company, hereinafter called the bank. The bank agreed to lend the Norsterns $215,000, to be advanced as needed for the construction of the forty-seven houses. The bank orally agreed to release each lot as sold, if the buyer would place a new mortgage with the bank, insured with the Federal Housing Administration.

On August 21, 1947, the Norsterns mortgaged the entire tract to the bank for $100,000, and on October 15, 1947, they gave the bank another mortgage for $115,000, covering twenty-five of the forty-seven lots. The total of $215,000 proved insufficient to build the houses, and the bank had to make further loans to the Norsterns. On December 3, 1947, the bank lent $28,500 on a mortgage of five new lots. On December 8, 1947, it lent $30,000 on a chattel mortgage covering building materials located on the tract but not annexed to the realty. On May 17, 1948, it lent $65,000 on a mortgage covering the twenty-five lots and the five lots above mentioned. It also lent $19,200 as unsecured loans. All the notes accompanying the foregoing loans were payable on demand.

The total of the advances made before May, 1948, was $292,700. On May 17, 1948, the Norsterns and the bank entered into a written agreement, which recited that the Norsterns had given the bank four notes totalling $308,500 secured by mortgages on the tract, and the bank agreed to advance to the Norsterns a balance of $65,000 over the $243,500 already advanced, said balance to be advanced upon the approval of the bank's representative as needed.

On June 21, 1948, the Norsterns made an assignment for

the benefit of their creditors to three assignees, and abandoned work on the houses. Under the agreement of May 17, 1948, the assignment made all the loans due and payable, and gave the bank the right to take possession and foreclose, and gave it title to all the building materials on or near the premises. On August 31, 1948, the bank and the assignees made an agreement, by which the bank agreed to advance not over $65,000 more to complete the houses, in accordance with the mortgage of May 17, 1948, and one Max Orlick was appointed agent of the assignees to complete the houses. The bank agreed to release any lot sold on receipt of the full purchase price. It was agreed that any advances in excess of $65,000 on the mortgage of May 17, 1948, should be added to that mortgage. Such excess advances amounted to $10,113.59.

Max Orlick finished the houses. On February 19, 1949, the bank foreclosed the $100,000 mortgage and bought in the tract at the foreclosure sale. On April 16, 1948, the United States Collector of Internal Revenue levied a lien on the property of the Norsterns for nearly $10,000 in taxes. On January 21, 1949, a mechanic's lien for nearly $1,000 was recorded by F. Feldman & Sons Lumber Company. After the foreclosure the bank discharged attachments aggregating more than $40,000.

Nineteen lots were sold by the Norsterns, partial releases were given by the bank, and a new mortgage on the particular lot sold was taken by the bank. The bank has advanced all the money called for by the notes and mortgages and $10,113.59 more. It holds title to twenty-five houses under its foreclosure, which have cost it $266,271.09, and has mortgages covering five vacant lots outside the original project.

Norstern was not the bank's agent or straw in the project. The bank was only a money lender.

The plaintiff John M. Duff, on September 17, 1947, entered into a written agreement with the Norsterns to buy lot 28 for $7,700, of which $800 was paid as a deposit. The Federal Housing Administration agreed to insure a $6,900

mortgage on the house. The house was not completed, and the bank gained title by foreclosure. But on December 20, 1948, Duff without the knowledge or permission of the bank or Orlick moved in and holds the house. Similarly, the plaintiff Shute, who agreed to buy lot 13, for a like price, never got the house, and the bank gained title by foreclosure. About July 26, 1949, Shute moved into the house without the knowledge or consent of the bank, and still holds it.

The other individual plaintiffs contracted with the Norsterns to buy individual lots. They paid deposits, and were to give mortgages. They have been willing to give the mortgages and complete the purchases, but the Norsterns and their assignees could not give title, and the bank now has title by foreclosure.

The plaintiffs Cheever and Tufts paid deposits on lots 2 and 34 respectively, and the bank released its blanket mortgage as to them. The bank took a mortgage for $6,300 on lot 2 and another for $7,900 on lot 34. These lots were not covered by the foreclosure, and the Norsterns or their assignees can give title subject to the later mortgages, the Federal tax lien, and the Feldman mechanic's lien.

The only appeal by the plaintiffs was from the final decree. They do not argue their exceptions to the master's report. See *Arey* v. *George Associates, Inc.* 299 Mass. 130, 132.

The mortgages contained no provision for partial releases. Any oral agreement by the bank for partial releases in the negotiations that preceded the mortgages was not enforceable, for it was "a contract for the sale of lands, tenements or hereditaments" or of some "interest in or concerning them." G. L. (Ter. Ed.) c. 259, § 1, Fourth. *Parker* v. *Barker*, 2 Met. 423, 431–432. *Montuori* v. *Bailen*, 290 Mass. 72, 75. *Denvir* v. *North Avenue Savings Bank*, 290 Mass. 137, 138. Furthermore, it was an agreement for the benefit of the Norsterns, not their grantees. *Clarke* v. *Cowan*, 206 Mass. 252, 255. Still further, an agreement to give a partial release is effective only until default under the mortgage, and by agreement of May 17, 1948, between the Norsterns

and the bank the assignment for the benefit of creditors was a default. *Reed* v. *Jones,* 133 Mass. 116, 120. *Clarke* v. *Cowan,* 206 Mass. 252, 255. *Springfield State Building Corp.* v. *Massachusetts Mutual Life Ins. Co.* 287 Mass. 317, 324.

The plaintiffs contend that the bank by giving partial releases after it had notice of their rights discharged its mortgage of August 21, 1947, upon which the foreclosure was had, so as to free the plaintiffs' lots from that mortgage. *George* v. *Wood,* 9 Allen, 80. *Silverstein* v. *Saster,* 285 Mass. 453, 456. *McRae* v. *Pope,* 311 Mass. 500, 506. The rule invoked by the plaintiffs depends upon the terms of the deeds from the mortgagor. *Rugg* v. *Record,* 259 Mass. 315. In this case the plaintiffs have no deeds from the Norsterns. They had merely contracts to buy a completed house, and had no right to a deed until the house should be completed. *McCormick* v. *Proprietors of the Cemetery of Mount Auburn,* 285 Mass. 548, 551. Until he got a deed, no plaintiff had a right to possession. *Kattor* v. *Adams,* 323 Mass. 686, 689.

Under these circumstances, the plaintiffs Duff and Shute had no right to take possession of the houses and lots contracted for by them, and the decree on the counterclaim, restraining them from trespassing, was right. The plaintiffs are entitled to no relief against the bank, and the decree dismissing the bill as to the bank was also right. That decree was a final decree and appealable as such (*Vincent* v. *Plecker,* 319 Mass. 560), although some of the plaintiffs may be entitled to relief against the assignees for the benefit of creditors or the Norsterns — a point which we need not consider at this time.

*Final decree affirmed with costs.*