MARSHALL J. STEWART *vs*. BASS RIVER SAVINGS BANK.

Barnstable.    October 16, 1975. — November 18, 1975.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Mortgage,* Of real estate, Partial release.   *Contract,* For partial re-
lease.   *Equity Jurisdiction,* Specific performance, Laches.

A parcel of industrially zoned land which was being held by a bank as
    additional security on a mortgage for the development of a certain
    residentially zoned parcel until such time as the planning board of
    a town gave final approval to a subdivision plan for the residential
    land should have been reconveyed to the plaintiff at the time of the
    approval by the planning board and not on the date that the appeal
    period expired for a "resubdivision plan" submitted by the plaintiff
    for the purpose of curing grading difficulties uncorrected after work
    commenced under the original approved plan. [578]
A decree ordering that a parcel of land, which was being held by a
    bank as additional security on a mortgage of a certain separate par-
    cel, be reconveyed to the plaintiff mortgagor pursuant to his agree-

ment with the bank was within a judge's equitable power, notwithstanding default by the plaintiff between the time appointed for the reconveyance and the time of the decree. [578-579]

A plaintiff seeking to set aside a foreclosure sale of one parcel of land because a separate parcel, also owned by him, was improperly included in the sale was precluded by laches from maintaining his claim where he failed to raise the issue of the inclusion of the second parcel until the beginning of trial of a suit against the mortgagee which culminated in a decree for the second parcel's reconveyance, and where the defendant would be subject to further expense and delay if a new foreclosure sale were required. [579-580]

BILL IN EQUITY filed in the Superior Court for the county of Barnstable on December 11, 1970.

The suit was heard by *Leen*, J.

*Bernard A. Dwork* for the plaintiff.

*Marvin N. Geller* (*M. Frederick Pritzer* with him) for the defendant.

HALE, C.J.   This is a bill in equity by which the plaintiff seeks to set aside a foreclosure sale and to have certain real property purchased by the defendant at that sale reconveyed to him. The defendant (the bank) counterclaimed for a deficiency from the sale. After trial the Superior Court entered a final decree denying the plaintiff's claims and fixing his indebtedness to the bank. The plaintiff appealed from that decree and, following oral argument, we remanded the case to the Superior Court for further findings. After rehearing, revised findings were filed, and judgment was entered directing reconveyance of part of the property to the plaintiff and adjusting the amount of damages previously awarded to the defendant by way of deficiency resulting from the foreclosure. The bank has appealed from the judgment entered after the case was remanded. We summarize the relevant facts found by the judge.

The plaintiff purchased a tract of undeveloped land consisting of approximately 220 acres in January of 1969. The tract, known as "Colony Hill," is located on Clay Pond Road and on Route 28 in the town of Bourne, south of the Cape Cod Canal. Approximately twenty acres were zoned for industrial purposes (the industrially-zoned land) and

the balance for single family residences. The plaintiff prepared a subdivision plan for the residential property and began negotiations with the bank for a mortgage loan to develop that portion of the land. The bank approved a loan in the amount of $600,000. In its commitment letter of March 31, 1969, the bank set forth the terms of the mortgage loan. Consummation of that loan was to be conditioned on final approval of the subdivision plan by the Bourne planning board. The plaintiff signed a note and a mortgage of the entire 220 acres on April 29, 1969, although the final approval of the residential subdivision had not yet been obtained. The bank required the plaintiff to subject the industrially-zoned land to the mortgage as additional security until such time as approval of the residential subdivision should be obtained. A letter from the bank to the plaintiff dated May 1, 1969, stated that the industrially-zoned land would "be released from the mortgage by the bank for no payment after you receive final Planning Board approval."

At a meeting on July 10, 1969, the planning board approved a subdivision plan containing 350 of the 512 residential lots of Colony Hill. The balance of the lots had either already been approved by the planning board or did not require planning board approval. The judge found that this vote constituted the "final Planning Board approval" contemplated by the May 1 letter. In letters to either the bank or its attorney dated July 25, August 6, August 28, and December 2, 1969, the plaintiff demanded release of the industrially-zoned land from the mortgage.

In addition to the promise to release the industrially-zoned land, the letter of May 1 stated, "We understand that you are desirous of making principal payments of $1,000 for each lot released." The bank granted partial releases from the mortgage for lots sold by the plaintiff upon the payment of $1,000 per lot during the time that the plaintiff's mortgage payments were current. After the plaintiff fell in arrears the bank refused to execute further partial releases.

Upon obtaining the mortgage, the plaintiff began to take

steps to develop the property, and the bank disbursed a total of $595,300 at the closing and thereafter. The plaintiff remained current in principal and interest charges through December 29, 1969, but he never paid the 1969 real estate taxes. He was in arrears on interest payments from December 29, 1969, through March 9, 1970, and made his last principal payment on the mortgage loan on March 30, 1970.

After the plaintiff's defaults had continued for several months the bank gave due notice of its intention to foreclose upon all the properties subject to the mortgage, including the industrially-zoned land. A foreclosure sale was scheduled for December 17, 1970, and duly advertised. The plaintiff filed his bill of complaint on December 11, 1970, seeking to enjoin foreclosure. The plaintiff first sought a preliminary injunction against the foreclosure sale, but his application was denied. The bill of complaint made no mention of improper inclusion of the industrially-zoned land. It referred only to the bank's refusal to release lots for the sum of $1,000 each. It was not until the beginning of the trial that the plaintiff added a prayer to his bill seeking reconveyance of the industrially-zoned land. The bank proceeded with the foreclosure and, as the sole bidder, purchased the entire tract (except for the lots which had been individually released) for $300,000. The judge found that the bank did nothing to "chill" the foreclosure sale. While the judge found that the bank improperly included the industrially-zoned land in the foreclosure sale, he found that it had not acted in bad faith.

Following our remand of the case, the judge ordered judgment directing that the industrially-zoned land be reconveyed to the plaintiff and upholding the foreclosure sale as to the balance of the tract. He further awarded a deficiency judgment to the bank in the amount of $275,016.10.[1] We affirm the judgment for the reasons set out below.

---

[1] No question has been raised concerning the computation of this figure.

1. The bank contends (a) that the plaintiff was not entitled to reconveyance of the industrially-zoned land, arguing that final planning board approval was obtained at a later date than that found by the judge and (b) that even if the plaintiff was entitled to a release of the industrially-zoned land before the foreclosure, the proper remedy should have been to give the plaintiff a credit against the mortgage deficiency for the value of the industrially-zoned land.

The May 1 letter specified that the industrially-zoned land was to be released without further payment upon the final planning board approval of the subdivision plan. The trial judge found that this approval was obtained on July 10, 1969. The bank contends that the requisite final approval occurred on December 10, 1969. It was on that date that the appeal period expired for a resubdivision plan submitted by the plaintiff on July 22, 1969. (The purpose of this plan was to cure difficulties in road and lot grading encountered when work began on the site under the plan approved on July 10.) The judge's finding that the July 10 approval was the one contemplated in the May 1 letter was plainly correct. Even if final approval occurred on December 10, the plaintiff was entitled to release of the industrially-zoned land. He was then current in his payments other than taxes and, in any event, as the industrially-zoned land was never intended to be permanent security for the loan, the agreement to release that land depended only on planning board approval, not on the current status of mortgage indebtedness. Contrast *Harris Realty Co.* v. *Epstein,* 266 Mass. 366 (1929); *Duff* v. *United States Trust Co.* 327 Mass. 17 (1951).

The judge did not abuse his discretion in ordering reconveyance of the industrially-zoned land. Planning board approval was obtained and that land should have been released from the mortgage long prior to the foreclosure sale. The order of reconveyance was within the judge's equitable power as "equity regards that as done which ought to have been done." *Lonergan* v. *Highland Trust Co.*

287 Mass. 550, 559 (1934). It has been said, however, that "[s]pecific performance is not a matter of absolute right. It ought not to be granted if it would result in imposing an undue hardship upon one party to an agreement or permit the other party to obtain an inequitable advantage. On the other hand, agreements are made to be performed, and relief should be given in the absence of special circumstances showing that it would be inequitable to do so." *Freedman* v. *Walsh,* 331 Mass. 401, 406 (1954). The plaintiff had done all that the agreement required him to do in order to obtain the release. The fact that the plaintiff subsequently defaulted in his obligations did not justify the bank's retention of land which was not bargained for as permanent security for those obligations.

The bank contends that the order of reconveyance would substantially prejudice it at this time for the reason that if the industrially-zoned land had been released in July of 1969, the bank would have immediately attached it to satisfy the arrearages on the mortgage note. It further claims prejudice as other attachments of the plaintiff's land levied after July, 1969, totalled over $280,000. These arguments are grounded on nothing more than speculation as to what the bank might have done in the circumstances.

2. The plaintiff argues that the improper inclusion of the industrially-zoned land in the foreclosure sale renders the sale void. We disagree. The trial judge properly exercised his discretion in upholding the validity of the foreclosure so far as it pertained to the residential property. To require the bank to conduct a new foreclosure sale at this time would subject it to further expense and delay. The foreclosure sale was found to have been conducted in good faith. The plaintiff's failure to raise the issue of the impropriety of the inclusion of the industrially-zoned land in the proposed foreclosure when he first filed his bill also justifies the judge's refusal to void the sale of the residentially-zoned land. (In fact, the prayer for relief inserted by the amendment called only for reconveyance of the industrially-zoned land.) Delay accompanied by prejudice

to the bank constitutes laches.[2] It would have been inequitable to permit the plaintiff the remedy he now seeks when the facts on which he based his later claim were known to him at the time he first brought the bill.

No contrary result is required by the application of the distinction between void and voidable foreclosure sales set out in *Chace* v. *Morse,* 189 Mass. 559 (1905). Errors that go to the legal basis of the power of sale make the sale totally void. Errors that involve mere irregularities in the exercise of the power of sale are only voidable. *Id.* at 561. In our opinion the present case falls within the latter category.

The judge's ruling to the effect that there was no binding agreement to release lots from the mortgage on the payment to the bank of $1,000 for each lot was plainly correct.

*Judgment after remand affirmed.*

---

[2] Although not pleaded, a judge may *sua sponte* find and rule on the basis of laches where justice so requires. *Turner* v. *Guy,* 2 Mass. App. Ct. 343 (1974).

