## MARY E. SHEEHAN *vs.* SANTA M. ANIELLO.

Plymouth. March 7, 1985. — April 8, 1985.

Present: GRANT, CUTTER, BROWN, & KASS, JJ.

*Mortgage,* Real estate, Partial release. *Contract,* For partial release. *Jurisdiction, Civil,* Specific performance.

A mortgagor could not avail herself of a provision in a second mortgage of one residential parcel and two commercial parcels of land calling for release of the residential parcel from the second mortgage upon discharge of the first mortgage on the three parcels, where the first mortgage was not discharged until after foreclosure proceedings as to both mortgages had been initiated, and where specific enforcement of the provision would deprive the second mortgagee of all remaining security for the second mortgage in circumstances of clear, long, continuing, and serious default on both mortgages. [623-626]

CIVIL ACTION commenced in the Superior Court Department on January 7, 1983.

The case was heard by *William H. Carey,* J., on a statement of agreed facts.

*Gilmore G. Gessner* for the defendant.
*John C. Stephenson* for the plaintiff.

CUTTER, J. On October 9, 1974, Mrs. Aniello and her husband conveyed by deed to Mrs. Sheehan and her husband three parcels of land in Wareham. Parcel One contained a residence. Parcels Two and Three are commercial property with a single building used as a grocery store on the two parcels. A savings bank in 1974 held a first mortgage on all three parcels, on which a balance of $20,431.61 was then due. The Sheehans assumed the first mortgage.

The Aniellos took from the Sheehans a note for $72,400 secured by a second mortgage (upon the statutory condition for any breach of which the mortgagee was to have the statutory power of sale) covering all three parcels. This second mort-

gage contained a typewritten insert (on the printed mortgage form) reading in part, "The mortgagees herein agree that upon the recording of the discharge of the existing first mortgage . . . Parcel One only of this mortgage will be discharged." This provision was inserted at the insistence of the attorney for the Sheehans.

The second mortgage went into default at least as early as September, 1981. Mrs. Aniello started foreclosure proceedings in November, 1981. Real estate taxes and water charges had not been paid since 1980. The first mortgagee instituted foreclosure proceedings in August, 1982, for breach of the mortgage conditions and a foreclosure sale was planned for October 25, 1982.

A few days before the proposed foreclosure sale, Mrs. Sheehan paid the first mortgage note and the first mortgage was discharged on November 1, 1982. After the discharge of the first mortgage, Mrs. Aniello refused to discharge Parcel One (the residence parcel) from the second mortgage on the ground that the second mortgage had been in default since October, 1981.

On January 7, 1983, Mrs. Sheehan brought this complaint to enjoin the foreclosure of the second mortgage at least so far as it related to Parcel One. Since 1974 Aniello has died and Sheehan has been divorced by his wife. Parcel One, the residence parcel, was awarded by the Probate Court (in the divorce proceedings) to Mrs. Sheehan. The present controversy thus is between Mrs. Sheehan and Mrs. Aniello.

A preliminary injunction was issued on January 10, 1983, restraining Mrs. Aniello from proceeding with the foreclosure sale of Parcel One. After foreclosure of Parcels Two and Three on March 25, 1983, there remains due on the Sheehan note and mortgage, so Mrs. Aniello claims, about $30,000 plus interest from September, 1981. The trial judge made no finding about the precise amount of the deficiency on the second mortgage.

The facts already summarized are set forth in a statement of agreed facts (not amounting to a "case stated") and in findings by the trial judge on evidence presented before him. He con-

cluded that the case was governed by *Stewart* v. *Bass River Sav. Bank*, 3 Mass. App. Ct. 574 (1975),[1] saying that "the house was not intended to continue as security under the . . . [second] mortgage once the [first] mortgage . . . was paid." He ordered judgment for Mrs. Sheehan restraining Mrs. Aniello permanently from foreclosing on Parcel One and directing her to release Parcel One from the second mortgage. From the judgment thus entered, Mrs. Aniello has appealed.

The principal issue for decision (as the parties stipulated before trial) is whether Mrs. Sheehan may avail herself of the provision calling for the release of Parcel One from the second mortgage after that mortgage has become in default and after foreclosure proceedings have been commenced. This, we think, depends upon whether this controversy is governed by the *Stewart* case, 3 Mass. App. Ct. 574, or by *Harris Realty Co.* v. *Epstein*, 266 Mass. 366 (1929), and *Duff* v. *United States Trust Co.*, 327 Mass. 17 (1951). See Park, Real Estate Law §§ 498, 531 (2d ed. 1981).

In the *Stewart* case, *supra*, the mortgagor of a large parcel consisting of both (a) land zoned for industrial purposes and (b) land zoned for single family residences was subjected to a single mortgage to a savings bank. The bank required the mortgagor to place the industrial land under the mortgage until the local planning board should approve a plan for residential subdivision of the land zoned for that purpose. By a letter dated May 1, 1969, essentially contemporaneous with the note and mortgage, the bank informed the mortgagor that the industrial land would "be released from the mortgage by the bank for no payment after you receive final [p]lanning [b]oard approval." 3 Mass. App. Ct. at 576. Such approval was obtained on July 10, 1969, by the mortgagor, so the trial judge found. By several letters beginning on July 25, 1969, the mortgagor demanded release of the industrial land from the mortgage. The

---

[1] The only Justice, Grant, J., who participated in the *Stewart* case in 1975 and is still on active duty with the Appeals Court, has been added to the panel by the other Justices on the panel pursuant to Mass.R.A.P. 24(a), 365 Mass. 872 (1974). He joins in this opinion.

mortgagor, even if final approval occurred as late as December 10, 1969, "was then current in his [mortgage] payments other than taxes." This court ruled (at 578) that "as the industrially zoned land was never intended to be permanent security for the [mortgage] loan, the agreement to release that land depended only on planning board approval, not on the current status of mortgage indebtedness." The *Harris Realty Co.* case, 266 Mass. 366, and the *Duff* case, 327 Mass. 17, were cited (at 578) without indication of why they were not apposite.

It appeared in the *Stewart* case (3 Mass. App. Ct. at 577) that the mortgagor remained current on principal and interest payments through December 29, 1969, but that he never paid the 1969 real estate taxes. The defaults continued for several months. The bank bought in the whole property at a foreclosure sale and was awarded a substantial deficiency judgment. This court (at 578-579) sustained the trial court's order that the bank reconvey to the mortgagor the industrially zoned land as an exercise of the equitable power to treat as done that which ought to have been done long prior to any substantial default or the foreclosure sale. The opinion went on to say (at 579) that specific performance of the agreement to release the industrial land "ought not to be granted if it would result in imposing an undue hardship upon one party to an agreement . . . . The . . . [mortgagor] had done all that the agreement required him to do in order to obtain the release. The fact that the . . . [mortgagor] subsequently defaulted in his obligations did not justify the bank's retention of land which was not bargained for as permanent security for those obligations" despite the fact that substantial attachments by others on the mortgagor's land had been levied after July, 1969.

In the *Harris Realty* case, 266 Mass. 366, land was subject to a first mortgage of $7,000 to a bank and to a second mortgage securing a note for $8,100. The second mortgage itself contained a provision that the mortgagor should have the right to raise a larger bank first mortgage and retain the excess of the proceeds of the new first mortgage over the amount of the original first mortgage. The holder of the second mortgage was obligated under the second mortgage to discharge that

mortgage temporarily to permit placing the new first mortgage, and then to replace the second mortgage for the amount then due upon the former second mortgage. When the holder of the equity of redemption sought to get the benefit of this provision, the 1927 taxes were overdue. The second mortgage contained a provision (the tax covenant) that the mortgagor would pay all taxes with respect to the mortgaged premises.

In the Superior Court a decree was entered dismissing a bill brought specifically to enforce this provision. The Supreme Judicial Court (per Rugg, C.J.) affirmed (at 369) saying, the tax covenant "was designed to protect the security in the hands of the mortgagee so that it should not be lessened by a lien for overdue taxes. The provision in the . . . [second] mortgage of which the plaintiff seeks specific performance is not an independent stipulation but it is an essential part of the whole contract. The plaintiff cannot demand as of right the aid of a court of equity to enforce in its own behalf the obligation of the defendants while disregarding the equally binding obligation resting upon it to pay taxes."[2] In *Duff* v. *United States Trust Co.*, 327 Mass. at 20-21, it was said "an agreement to give a partial release [from a mortgage] is effective only until default under the mortgage" and there had been such a default by reason of the mortgagor's assignment for the benefit of creditors. See the inconclusive discussion in *Springfield State Bldg. Corp.* v. *Massachusetts Mut. Life Ins. Co.*, 287 Mass. 317, 324-325 (1934).

We think that the *Harris Realty* case, *supra*, controls the present controversy. In the *Stewart* case, 3 Mass. App. Ct. at 578, when the planning board gave its approval in July, 1969, to the plan for development of single house lots, the mortgagor then was current in his payments. No mortgage default had oc-

---

[2] The opinion (at 369-370) went on to say that, even if the excess proceeds of the new first mortgage were to be used to pay the overdue taxes, and "a decree might be framed to this effect in the exercise of sound discretion, it still is true that specific performance of a contract is not a strict and absolute right and ordinarily will not be granted when the party seeking it has failed in an important particular to perform obligations resting on him arising out of the same contract."

curred and the release should have been given. The judge was held to have acted within his discretion in ordering the industrial lots reconveyed by the mortgagee because the specified occasion for the release then had taken place several months before any mortgage default had occurred. In the present case the first mortgage.(which had been assumed by the Sheehans) was not discharged until after foreclosure proceedings of both mortgages had been initiated.

We hold that in the different circumstances of clear, long continuing, and serious default on both mortgages by Mrs. Sheehan, the provision inserted in the second mortgage for a release of Parcel One from that mortgage could not be given specific enforcement, even as matter of discretion, to deprive Mrs. Aniello of all remaining security for the second mortgage by a last minute payment of the first mortgage. See and compare the discussion in *Widett & Widett* v. *Snyder,* 392 Mass. 778, 784-785 (1984). That payment came too late.

The judgment is reversed. Judgment is to be entered for Mrs. Aniello.

*So ordered.*