NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-467

EDWARD J. O'ROURKE

vs.

KARIN GALIL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2002, during the early years of a sixteen-year committed relationship, the plaintiff, Edward J. O'Rourke, and the defendant, Karin Galil, together purchased a home in Winchester (the property) and held title initially as tenants in common, and later as joint tenants.[1]  In June 2012, O'Rourke transferred his interest to Galil to facilitate refinancing the mortgage on the property with the joint understanding that his interest in the property would be deeded back to him after completion of the transaction.  Although the parties continued to live together at the property for an additional five years, Galil never executed a deed to revive O'Rourke's interest, and after the relationship ended in 2017, O'Rourke brought this action seeking a

---

[1] The relationship produced one daughter.  The parties never married.

constructive trust on the basis of breach of the implied covenant of good faith and fair dealing,[2] unjust enrichment, promissory estoppel, breach of fiduciary duty, and misrepresentation.  He also sought a declaratory judgment that the parties "share title of the Winchester Property jointly."[3] After a trial, a judge of the Probate and Family Court entered judgment declaring that Galil holds the Winchester property in a constructive trust for the benefit of O'Rourke based on unjust enrichment and breach of fiduciary duty, and ordered her to convey the property to herself and O'Rourke as tenants in common.  Galil appeals from the judgment;[4] because we agree that Galil holds the property in a constructive trust on the basis of unjust enrichment, we affirm with a modification.

Background.  We summarize the facts as found by the judge, reserving some for discussion of the issues.  The history of the purchase of the property is undisputed; the parties purchased

---

[2] The implied covenant of good faith and fair dealing count was dismissed at trial and no argument has been made on appeal as to that count.

[3] Galil filed an answer containing affirmative defenses of, among other things, the Statute of Frauds, the statute of limitations, and accord and satisfaction.  Galil did not file a counterclaim.

[4] To the extent Galil also noticed an appeal from the order denying her motion for relief from judgment, she has not raised any argument addressing that order; accordingly, we deem any such argument waived and we need not further address the matter. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief").

the property in 2002 with O'Rourke contributing $312,000 towards the down payment, Galil $125,000, and together taking out a loan in the amount of $550,000. The judge found that between 2002 and 2012, O'Rourke paid the loan payments, taxes, insurance, and utilities; Galil paid certain other expenses and periodically reimbursed O'Rourke for portions of his payments. The judge specifically found that O'Rourke's payments were not intended to create a greater ownership interest in the property but instead that the parties essentially divided up their living expenses, with both contributing to the maintenance, repair, and improvements to the property.

The parties refinanced their loan on several occasions. In May and June of 2012, Galil initiated a refinance and worked with a mortgage broker to take advantage of lower rates. Because O'Rourke had not filed his 2010 or 2011 tax returns, the refinancing could not proceed. In order to facilitate the refinancing, O'Rourke agreed to transfer his interest in the property to Galil "subject to [Galil's] promise to reconvey the property to him after the refinance was complete. [O'Rourke] trusted [Galil] to reconvey the property to him." The judge found that O'Rourke "did not intend to convey his interest in the property to [Galil] permanently for no consideration."

Galil testified that her original plan was to reconvey in August of 2012, but that when O'Rourke refused to pay a share of

3

the refinanced loan, she told him she would reconvey when he renewed his contributions. The judge found that Galil refused to reconvey the property to O'Rourke because O'Rourke stopped paying the loan installments. Galil then paid the approximately $4,505 monthly payment on the loan, taxes, and insurance; she also stopped making her usual $5,000 per month payment to O'Rourke for other expenses. Thus, as the judge found, "their financial arrangement remained largely the same."[5]

Galil testified that she spent $577,657 for a kitchen renovation and other repairs, though she has filed suit against the contractor seeking damages for errors. O'Rourke testified that an earlier estimate for the kitchen renovation had been $230,000 and argues that, at most, the evidence supports Galil's expenditures of $304,046. Neither party presented evidence of how much the kitchen renovation increased the fair market value of the property. O'Rourke and Galil offered appraisers' opinions of the property's fair market value at the fall of 2019; O'Rourke's appraisal was $1,600,000 in November 2019, with Galil's at $1,450,000 in October 2019. The judge took judicial

---

[5] Galil submitted several exhibits purportedly showing that she overpaid for joint expenses between 2006 and 2012 by some $370,605. Leaving aside any statute of limitations issues, the judge found, to the contrary, that Galil had not contributed disproportionately.

4

notice that the fair market value likely had increased by the time of trial.

Discussion.  "[U]nmarried cohabitants may lawfully contract concerning property, financial, and other matters relevant to their relationship."  Wilcox v. Trautz, 427 Mass. 326, 332 (1998).  However, they are not entitled to equitable distribution of property; separate support and alimony; or the right to sue for loss of consortium.  Id. (and cases cited).  See Sutton v. Valois, 66 Mass. App. Ct. 258 (2006).  "In Massachusetts, there is no presumption that a claimant's contributions during a romantic relationship are gratuitous."  Bonina v. Sheppard, 91 Mass. App. Ct. 622, 625 (2017).

"A constructive trust is a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or 'other circumstances' in which a recipient's acquisition of legal title to property amounts to unjust enrichment."  Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 246 (2007), cert. denied, 552 U.S. 1099 (2008), quoting Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789, cert. denied, 511 U.S. 1142 (1994).  "We examine the judge's imposition of equitable remedies under an abuse of discretion standard."  Bonina, 91 Mass. App. Ct. at 625, quoting Cavadi v. DeYeso, 458 Mass. 615, 624 (2011).

1. Unjust Enrichment. "Unjust enrichment occurs when a party retains the property of another against the fundamental principles of justice or equity and good conscience" (quotation omitted). Bonina, 91 Mass. App. Ct. at 625. "Whether the benefit was unjust 'turns on the reasonable expectations of the parties.'" Id., quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013). "The fundamental question . . . is whether [Galil] . . . received [a property interest that] in equity and good conscience belongs to [O'Rourke]." Sutton, 66 Mass. App. Ct. at 265, quoting National Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co., 318 Mass. 142, 150 (1945).

Galil claims she was not unjustly enriched because she has paid more than her fair share of expenses. The judge found that:

> "[Galil] argued in her proposed findings that she was not unjustly enriched by retaining [the property] because she contributed disproportionately to the parties' living expenses. The Court does not credit this argument. The evidence demonstrated that during their relationship, both parties contributed to the expenses for [the property] and for their other living expenses. They came to an agreement on how to share their joint expenses and re-negotiated that agreement over time. There was no credible evidence that the way they divided their expenses was intended to result in either party having a greater ownership interest in [the property]. Nor does this Court find that [Galil] contributed disproportionately to the parties' living expenses."

The judge found in addition that the parties did not intend that O'Rourke's transfer of his interest in the property to Galil was

6

intended to be a gift.  His contribution to the downpayment
exceeded Galil's by $187,000; he paid the monthly loan
installments, insurance, and taxes for ten years; he continued
thereafter to make payments to maintain the property and cover
the utilities.

While an oral promise to reconvey may be unenforceable
under the Statute of Frauds, an "obligation to hold [the
property] in trust as implied from the entire course of the
couple's conduct" is enforceable.  Citizens Bank of Mass. v.
Coleman, 83 Mass. App. Ct. 609, 617-618 (2013).  See Abalan v.
Abalan, 329 Mass. 182, 183-184 (1952).  Moreover,

> "'[i]f two persons have formerly lived together in a
> relationship resembling marriage, and if one of them owns a
> specific asset to which the other has made substantial,
> uncompensated contributions in the form of property or
> services, the person making such contributions has a claim
> in restitution against the owner as necessary to prevent
> unjust enrichment upon the dissolution of the
> relationship.'  Unjust enrichment in this context is based
> on the 'claimant's frustrated expectations.'"

Bonina, 91 Mass. App. Ct. at 625, quoting Restatement (Third) of
Restitution and Unjust Enrichment § 28(1) & comment c (2011).
Restitution can include the equitable remedy of reconveyance.
Cf. Bakwin v. Mardirosian, 467 Mass. 631, 639 (2014) (ordering
equitable remedy of reconveyance); Stewart v. Bass River Sav.
Bank, 3 Mass. App. Ct. 574, 578-579 (1975), quoting Lonergan v.
Highland Trust Co., 287 Mass. 550, 559 (1934) ("order of
reconveyance was within the judge's equitable power as 'equity

7

regards that as done which ought to have been done'").  We discern no error in these circumstances in the judge's conclusion that Galil was unjustly enriched when she took title to O'Rourke's interest in the property understanding her obligation to reconvey it and subsequently refused to reconvey.[6]

2.  Statute of limitations and laches.  Galil argues that O'Rourke's claim to an ownership interest in the property is barred by the three-year statute of limitations, claiming that O'Rourke was aware in 2012 that she would not reconvey the property and that the statute of limitations therefore expired in 2015.  The judge rejected that argument, reasoning that O'Rourke did not learn until 2018 that Galil would not reconvey the property to him and that he commenced this case promptly thereafter.  We discern no error.

It is undisputed that, as the judge found, the transfer of O'Rourke's interest to Galil in 2012 was solely for the purpose of facilitating the refinancing to "take advantage of lower interest rates."  Galil admits that it was her intention, when she took title to O'Rourke's interest in the property, to reconvey it to him.  The judge credited O'Rourke's testimony

---

[6] Because of the result we reach on the issue of unjust enrichment, we need not consider whether O'Rourke was also entitled to a constructive trust based on his additional breach of fiduciary duty, promissory estoppel, or misrepresentation claims.

8

that when he asked when she would reconvey the property, Galil told him that the bank would not allow it and that the parties agreed it would happen when they refinanced again. Although Galil denied agreeing to reconvey when they refinanced, the judge credited O'Rourke's testimony on this issue. "In a bench trial credibility is 'quintessentially the domain of the trial judge [so that his] assessment is close to immune from reversal on appeal except on the most compelling of showings.'" Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 496 (2012), quoting Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).

Galil contends that even if she had promised to reconvey when they refinanced, O'Rourke was aware that she again refinanced in December of 2012, that she did not reconvey to him at that time, and, thus, that O'Rourke's claim accrued and the limitations period began to run by at least December 2012. Galil points to no e-mail or other evidence, however, that O'Rourke was aware of the December 2012 refinance. Moreover, the judge did not credit Galil's testimony on this issue, but instead credited O'Rourke's testimony that he was unaware of that refinancing until 2018. Again, that credibility determination was for the trial judge. Galil has not shown that the judge's credibility determination was clearly erroneous.

Moreover, we note that Galil, herself, testified that she told O'Rourke that she would reconvey if O'Rourke renewed his

9

loan payments.  This was not an absolute and unconditional repudiation.  See Prendergast v. Sexton, 282 Mass. 21, 24-25 (1933) (refusal to reconvey unless plaintiff paid alleged debt was not absolute and unconditional repudiation of promise to reconvey).  Repudiation of a trust "does not occur if the trustee instead of flatly rejecting a demand or request . . . gives some apparently good or plausible reason for [her] noncompliance, or promises future compliance . . . [which] may well be regarded as being more nearly a recognition of the trust than a repudiation thereof" (quotation omitted).  Lattuca v. Robsham, 442 Mass. 205, 214 (2004).  The judge essentially found that a definitive repudiation did not occur until shortly after November 2017; O'Rourke commenced this action in April 2018.

Finally, Galil contends that over the years she took the position in discussion with O'Rourke that she owned the property and he had lost his equity in it due to the disparity of their contributions to joint expenses, and those assertions should have started the clock.  However, we cannot conclude that this wrongful legal conclusion constituted a clear repudiation of her status as trustee of O'Rourke's interest in the property.  It appears that these statements were made in 2016 and 2017 during the renovation of the kitchen -- well within the three-year statute of limitations.  Moreover, to the extent they occurred more than three years prior to this action, the parties

10

continued to live together in the property, shared expenses, and the judge found that O'Rourke made contributions to the maintenance of the property while carrying the costs of a second property the parties' owned, and he remained as an additional insured on the homeowners' insurance policy. O'Rourke was not obligated to commence an action based on Galil's claims that his equity had disappeared due to disparate contributions; it was an incorrect statement of law, and her self-help remedy is unsupported in the law.

Galil also argues that laches bars O'Rourke's claim because his failure to pursue his claim sooner caused her to expend substantial sums in renovating the kitchen and other areas of the home, which she would not have done if she did not believe she owned one hundred percent interest in the property. For many of the same reasons, Galil's laches argument is unavailing. O'Rourke commenced this action within a year of learning that Galil had definitively repudiated her obligation to reconvey. The facts indicate that Galil's unilateral legal conclusion that O'Rourke no longer was entitled to have his interest in the property reconveyed to him notwithstanding his many contributions to the acquisition and maintenance of the property -- rather than any conduct on O'Rourke's part -- is what caused Galil to make expenditures on property she held partially in trust for O'Rourke.

11

3. _Breach of contract_. Galil next argues that O'Rourke's refusal to make financial contributions toward the property constituted a material breach of their general contract to share expenses equally and justified her retention of the property. She did not bring a breach of contract counterclaim. Moreover, in rejecting this claim, the judge noted that Galil's relative contribution did not change because as she began making monthly loan payments (of less than $5,000) she also stopped making monthly expenses payments to O'Rourke (previously in the amount of $5,000).

Nothing in the record suggests that either party understood that when O'Rourke transferred his interest in the property to Galil, her obligation to reconvey was conditioned on equity in their joint contributions or any obligation of O'Rourke to compensate Galil. Galil cites no authority for the proposition that she may unilaterally change her position as trustee of O'Rourke's interest in the property because she believed, going forward, that she would bear a greater portion of their shared expenses. Her claim that "[a]s in a foreclosure action, Galil had the right to terminate O'Rourke's ownership interest after he defaulted on his mortgage obligation" is unsupported by citation to legal authority.

4. _Mortgage and improvements_. We note that the judgment does not mention the mortgage. All of the judge's findings

12

indicate that the parties agreed to refinance the mortgage and implicitly agreed that their interests would be subject to the mortgage. Equity requires in these circumstances that O'Rourke's interest, like Galil's, be subject to the outstanding mortgage. We, therefore, modify the judgment to reflect that the transfer to O'Rourke of his fifty percent interest in the property is subject to the outstanding mortgage; in all other regards, it is affirmed.

Further, we are not unsympathetic to Galil's claims that she made considerable improvements to the property based on her incorrect belief that she owned the entire fee. Should the parties seek to partition the property, it will be open to Galil to show that the improvements she paid for have enhanced the value of the property and to seek reimbursement upon a sale in partition. See Lodigiani v. Paré, 103 Mass. App. Ct. 140, 146 (2023).

To the extent we have not specifically addressed Galil's remaining arguments, they "have not been overlooked. We find nothing in them that requires discussion." Department of Revenue v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004) (quotation omitted).[7] The judgment shall be modified to specify that the

---

[7] O'Rourke's motion and briefing request for an award of counsel fees pursuant to G. L. c. 231, § 6F, and G. L. c. 211A, § 15, is denied. Galil's request for attorney's fees is also denied.

13

transfer to O'Rourke of his undivided fifty percent interest in the property, like Galil's undivided fifty percent interest, remains subject to the outstanding mortgage.  As so modified the judgment is affirmed.  The order denying Galil's motion for relief from judgment is affirmed.

<u>So ordered</u>.

By the Court (Meade, Singh & Smyth, JJ.[8]),

Assistant Clerk

Entered:  January 18, 2024.

---

[8] The panelists are listed in order of seniority.

14